THE KANSAS POSTAL TELEGRAPH CABLE COMPANY, *Appellant*, v. THE LEAVENWORTH TERMINAL RAILWAY & BRIDGE COMPANY, *Appellee*.

No. 18,127.

SYLLABUS BY THE COURT.

1. CONDEMNATION PROCEEDINGS—*Telegraph Lines on Bridge—Measure of Damages*. In condemnation proceedings damages to property not taken should be confined to those which from the evidence may reasonably be expected to result.

2. ——— *Same*. An item allowed by the jury without reasonable evidential basis should be set aside.

Appeal from Leavenworth district court. Opinion filed April 12, 1913. Modified.

*A. E. Dempsey,* of Leavenworth, *John C. Gage,* and *Sanford B. Ladd,* both of Kansas City, Mo., for the appellant.

*W. W. Hooper,* of Leavenworth, and *John Barton Payne,* of Chicago, Ill., for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff appeals from an award of damages. Condemnation proceedings were begun to condemn the right to string its wires over the Kansas portion of the defendant's bridge. It was agreed that the telegraph company had a right to institute and maintain the proceeding, and that the only question for the jury was the amount of damages to be awarded. The jury fixed the sum at $2000 and answered certain special questions showing the items making up the total. Complaint is made that some of these items were not supported by any testimony, that the court erred in its instructions, and that the award was excessive and speculative.

The measure of damages adopted in the examination of witnesses without objection, and used by the court in the instructions, was the difference between the value of the structure before and after the appropriation. The jury allowed $1000 for additional trouble in turning the draw, and $200 for the wearing off or scraping off of paint by the plaintiff's employees. It is insisted that the first was unwarranted by the evidence and the second imaginary. But evidence was introduced which justified these allowances, and the fairness of the jury was shown by disallowing various items claimed and more or less supported. The total damage was by the defendant's witnesses fixed at $8000 to $10,000, $66\%_{100}$ being the Kansas portion—or about 60 per cent. The only witness for plaintiff who attempted to fix the damage estimated it at $722. The jury were instructed that they might consider, among other things, "the future damages that might accrue

to said bridge by reason of personal property being injured thereon, by reason of said wires falling by storm or other causes." It is insisted that this left the jury to conjecture causes, including the negligence of the bridge company.

The plaintiff requested an instruction that they should not consider the mere possibility that some of the employees of the plaintiff might at some time be injured by trains moving across the bridge, the mere possibility that the wires or cable of the telegraph company might at some future time come in contact with high-tension electric wires and damage the bridge, or that at some remote time in the future the defendant might wish to reconstruct its bridge and that the plaintiff's cable or apparatus might interfere therewith; that "all mere possibilities are too remote and improbable to be considered as elements of damages, and you are to consider only such elements as are shown by the testimony as reasonably sure to occur." This was refused. The jury, however, allowed nothing for damages because of the possibility of the plaintiff's employees meeting with accidents by the operation of trains over the bridge for which the bridge company might be liable, and allowed nothing on account of possible contact between the plaintiff's wires and electrical currents that might pass along their wires and injure persons and property. Neither did they allow anything for possible interference of the telegraph cable with the work of rebuilding or reconstructing the bridge. Hence the refusal to give this instruction could have worked no harm to the plaintiff except as to the admonition to regard only such damages as were shown to be reasonably sure to occur. We think, however, the defendant was entitled to be compensated for such damages as the jury believed from the evidence might reasonably be expected to result, and not merely those which were reasonably sure to occur. (*M. K. & T. Rly. Co. v. Haines*, 10 Kan. 439; *A. & D. Rly. v. Lyon,*

24 Kan. 745; *K. C. & E. Rld. Co. v. Kregelo,* 32 Kan. 608, 5 Pac. 15.) The use of the words "other causes" by the court in its instruction should have been limited or explained, but we do not think their use misled the jury to the prejudice of the plaintiff.

The principal contention is that the allowance of $545 for damages to personal property on the bridge was unwarranted. It is insisted that there was not the slightest evidence showing or tending to show that there was or would be any personal property on the bridge liable to be damaged. The defendant replies to this by asking why, if there was no evidence, the plaintiff submitted question No. 22 to the jury for answer, to which the plaintiff replies that the court having given an instruction covering this matter at the request of the defendant, to which the plaintiff excepted, it took the very natural means of self-defense of asking the jury to state what they allowed in this respect in order to show that such allowance, if any, would be without evidential support. We do not find anything in the evidence showing or tending to show the presence of any personal property on the bridge likely to be damaged by reason of the plaintiff's wires, and we are at a loss to know what the jury had in mind as a basis for this item of allowance. (*Postal Telegraph Co. v. Peyton,* 124 Ga. 746, 52 S. E. 803, 3 L. R. A., n. s., 333, and note.) Finding no basis for it we think it should be set aside.

The judgment is therefore modified by deducting the item of $545 therefrom. In other respects it is affirmed.