No. 31,098.

HANFORD FITCH, *Appellee,* v. THE STATE HIGHWAY COMMISSION, etc., *Appellant.*

(21 P. 2d 318.)

Opinion filed May 6, 1933.

*Wint Smith,* attorney for state highway commission, *Ralph M. Hope, Edward F. Arn,* both of Topeka, *Robert R. Hasty* and *George E. Hasty,* both of Wichita, for the appellant.

*William J. Wertz* and *Vincent F. Hiebsch,* both of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment awarding damages for the condemnation of lands for highway purposes. The plaintiff appealed to the district court from the award of the appraisers, and at the trial the court submitted special questions, to which answers were returned as follows:

"1. What do you find was the reasonable market value on March 25, 1931, the date of condemnation, of the .97 acre of land taken from the appellant for use in the highway? A. $654.75.

"2. What do you find was the reasonable market value on March 25, 1931, just before the appropriation of appellant's 15-acre tract? A. $9,591.75.

"3. What do you find was the reasonable market value, immediately after the condemnation, of the remainder of appellant's 15-acre tract, less the .97 of an acre appropriated for the highway? A. $5,299.80.

"4. Do you find that appellant has been specially benefited by the condemnation of his land and the construction of the highway over his land? A. No.

"5. What do you find to be the most advantageous purpose to which the property can be put since March 25, 1931? A. Truck farming and suburban home.

"6. How much, if anything, do you allow the appellant as full compensation, exclusively, for the following items? (a) The division of appellant's land by the highway into two tracts? A. $86. (b) The inconvenience in crossing the highway from one tract to the other? A. $1,900.

"7. How much, if anything, do you award the appellant as full compensation, exclusively, for damage to the land on the west side of the highway by reason of the stopping or damming up of overflow waters? A. $271.20.

"8. How much damage, if any, exclusively, do you allow to the remaining tract of land by reason of the highway being elevated above the land? A. $1,450."

The defendant filed its motion to vacate and hold for naught the answers to the special questions for the reason they were contrary to the evidence, and because of misconduct of the jury in answering the same, and also filed its motion for a new trial because of abuse of discretion in refusing to allow the jury to view the premises, misconduct of the jury in the method used in arriving at a verdict, erroneous rulings and instructions of the court, and that the verdict is contrary to the evidence, both of which motions were overruled.

When the trial started the defendant asked that during the course of the trial the jury be permitted to view the premises, and the court then stated:

"We will permit the jury to examine the property sometime during the trial."

After testimony had been introduced, the· defendant renewed its request, and the court then refused it because the property had been improved, in part, by erection of a filling station. After the jury had retired to deliberate, it sent a note to the court requesting permission to view the premises, and the court advised the jury it did not deem it proper that the jury view the premises, as improvements had been made and conditions had changed since the condemnation. There had been a great deal of evidence with reference to the effect

on the land not taken of the raising of the grade of the highway over that of the adjoining land, the character of the land, the uses to which it had been and could be put, and it is urged that the jury's request indicated it was not satisfied as to its knowledge. While the court might very properly have permitted a view by the jury, under the statute (R. S. 60-2910) it was discretionary with the court, and we cannot say that there was any abuse of that discretion.

The trial court properly refused to admit in evidence plaintiff's exhibit D, for so far as the record before us shows, there was no evidence with relation to the city dump or its proximity to the land in question. In view of the testimony concerning the filling station, had the court admitted plaintiff's exhibit E, there would have been no error, but it only shows a situation concerning which there is much other evidence, and the court's refusal to admit it was not error.

In his case in chief, plaintiff testified as to the value of his land in question in this action, and that it had been used for farming and that farming was the most advantageous use to which it could be put, and that he had traded off a part to be used for a filling station. Upon being asked whether the balance could be used the same way, he answered not without a great deal of expense, and he was then permitted to testify as to the amount of yardage of earth it would take to fill the land. Stella Miller, owner of land taken in the same condemnation proceeding and who had an appeal pending, testified that the most advantageous use to which the land in question could be put was truck gardening. She also testified she was a clerk in the Wichita street department and familiar with the general charge for moving earth, and she was then permitted to testify as to where such dirt might be obtained, the cost, if the haul was only a certain distance, and the charge for any overhaul. The plaintiff attempts to justify the introduction of this evidence with relation to fill and cost on the ground that defendant, in its opening statement, stated that the building of the highway would be a benefit to the land, and contends that in any event its admission was not error because the jury allowed nothing for the fill. In our opinion, the admission of this testimony was erroneous. The answers to the question as to the items making up the verdict will be discussed later. In so far as the testimony referred to is concerned, it brought before the jury in a forcible manner that if the property was to be brought to grade

for some purpose other than farming the cost would run into thousands of dollars, and the effect of such testimony is plainly reflected in the jury's answer wherein it allowed $1,450 damage because the highway was elevated above the land.

After the trial the defendant procured an affidavit of the foreman of the jury and the affidavits of some of the jurors, which, taken alone, show that the answers to special questions 1, 2 and 3 were obtained by the "quotient method," and that the answers to questions 6, 7 and 8 were obtained by a percentage method, that is, the total damage to land not taken was first determined and thereafter divided by an arbitrary method, and the amounts of the various elements of damage thus determined. When the motion for new trial was presented, some of the jurors were personally questioned and for one reason and another qualified the statements of the affidavits, and the court found that the verdict was not a quotient verdict. The trial court denied the motions filed against the answers to the special questions and for a new trial.

Whether the verdict was or was not a quotient verdict was a question of fact for the trial court to determine, and the verdict having been approved by the trial court, this court will not disturb the judgment on that account. But it is clear from the record in this case that the verdict was improperly arrived at for another and very different reason. The jury, instead of first determining from the evidence in what manner and to what extent the plaintiff had been damaged, proceeded first to fix the value of his land before the condemnation and allowed for the land taken at a proportionate rate, i. e., $654.75. It then determined the value of the tract after condemnation, and thus arrived at the damages to the land not taken, i. e., before condemnation, $9,591.75, after condemnation, $5,229.80, leaving a difference of $4,361.95, from which it subtracted the value of the land taken, leaving damage to the land not taken of $3,707.20. It might be remarked here that the exactness of the figures lends a good deal of credence to the claim that a verdict was reached by the quotient method. The jury then determined, in order to answer special questions 6, 7 and 8, that the items therein mentioned bore a percentage ratio to the total damage to the land not taken, and that such percentage ratio made the loss as follows:

| | | |
|---|---|---:|
| 6. (a) | Division of land | $86.00 |
| 6. (b) | Inconvenience in crossing | 1,900.00 |
| 7. | Stopping overflow waters | 271.20 |
| 8. | Damage, exclusively by reason of elevation of the highway | 1,450.00 |
| | Total | $3,707.20 |

In view of the fact that in answer to question 5 the jury found that the most advantageous use to which the property could be put since condemnation is "Truck farming and suburban home," it is readily apparent that the specific answers are, in and of themselves, wrong, and are without any evidential foundation—in fact, it is probably not too much to say they are not only arbitrarily arrived at, but they overlap and are inconsistent; the evidence warranted the answer to No. 6 (a), it may have warranted an answer to No. 6 (b), but not the answer returned, and there is an entire lack of evidence to support the answer to No. 8 unless the evidence heretofore referred to as improperly admitted is considered. A somewhat similar situation existed in *Telegraph Co. v. Bridge Co.*, 89 Kan. 418, 131 Pac. 143, where this court said:

"We do not find anything in the evidence showing or tending to show the presence of any personal property on the bridge likely to be damaged by reason of the plaintiff's wires, and we are at a loss to know what the jury had in mind as a basis for this item of allowance. (*Postal Telegraph Co. v. Peyton*, 124 Ga. 746, 52 S. E. 803, 3 L. R. A., n. s., 333, and note.)" (p. 421.)

In view of the entire situation, we cannot approve what was done, we are not well enough advised to delete any particular item of the jury's answers nor are we warranted in changing any of the specific amounts set, but we are well satisfied that a just and righteous verdict has not been reached.

The defendant's motion to set aside answers to the special questions and its motion for a new trial should have been allowed.

The judgment of the lower court is reversed, and the cause is remanded for a new trial.