No. 33,826

JOHN KALIVODA and ANTONIE KALIVODA, *Appellees*, v. STEPHEN KALIVODA and MARY KALIVODA, *Appellants*.

(80 P. 2d 1050)

Opinion filed
July 9, 1938. ▮

*A. M. French, Max White,* both of Concordia, and *Frank G. Spurney,* of Belleville, for the appellants.

*N. J. Ward* and *Guy E. Ward,* both of Belleville, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action by a father and mother to recover from their son and his wife an annuity of $150 for the five years preceding the filing of the action and to have a judgment for the same and all future annuities made a lien upon the McDonald land now owned by both defendants. The case involves questions as to the extent of liability of the son under a written agreement, the statute of limitations, the statute of frauds, the defense of homestead rights and the application of a judgment lien.

The case was tried by the court. Findings of fact and conclusions of law were made, and judgment was rendered in favor of plaintiffs and against the son for $750, with interest from the date of filing the action, and $300, with interest, from date of judgment, and the total judgment was made a lien on the McDonald land. The annuity of $150 was decreed by the court to be an obligation of the son during the life of the survivor of the parents. After the motion for a new trial was overruled the defendants appealed, raising the questions above indicated, and also the sufficiency of the evidence to support the findings of the trial court, and especially the finding and judgment making the judgment a lien upon the McDonald land.

Plaintiffs also have filed a cross-appeal raising two points in particular: First, the failure of the trial court to make a finding as to the joint consent of the defendant, Mary Kalivoda, to the transfer of plaintiffs' lien to the McDonald land, which the plaintiffs claim was established by the evidence. We will defer consideration on this first point in the cross-appeal until we reach the points raised by the appeal concerning the evidence and the findings of fact. The second point raised by the cross-appeal is that the appellants did not file their motion for a new trial within the three-day limit required by statute after the court had made its decision, so that there would be nothing that could come up on their appeal except the question as to the sufficiency of the findings and conclusions to support the decree. (*Perkins v. Accident Association,* 96 Kan. 553, 152 Pac. 786, and *Benson v. Rosebaugh,* 128 Kan. 357, 278 Pac. 41.)

Findings of fact and conclusions of law were filed September 28, 1937. The defendants, on September 30, 1937, filed a motion requesting additional findings and conclusions. On October 21, 1937, the trial court, in compliance with such motion, filed additional findings and conclusions. Two days later the defendants filed another similar motion for additional findings and conclusions, and on November 17, 1937, this motion was heard and overruled and judgment was that day rendered, and on the same day, November 17, 1937, defendants filed their motion for a new trial. This was the first and only motion for a new trial that was filed by the defendants. Counsel for plaintiffs are correct as to the rule that the announcement of findings of fact and conclusions of law constitutes the decision of the court within the meaning of the code requiring a motion for a new trial to be filed within three days after the decision is rendered. (*Milling Co. v. Schreiber*, 102 Kan. 172, 169 Pac. 222; *Brubaker v. Brubaker*, 74 Kan. 220, 86 Pac. 455; and *Dolan Mercantile Co. v. Wholesale Grocery Subscribers*, 131 Kan. 374, 291 Pac. 935.) When this matter was presented and urged by the plaintiffs before the trial court the court denied the motion, but not on this ground, stating plainly that it was not the understanding of the court that those earlier findings were the final findings of the court, which in effect canceled the filing dates on the preliminary findings. The trial court is the one to say whether or not his preliminary findings are to be final. They and the conclusions, when complete, constitute the decision of the court, and the judge is the one to say when his decision is rendered. Both parties furnished the court with suggested findings and conclusions, and after the court furnished a set of findings and conclusions both parties moved for additions and changes. As a result of these motions several changes were made and three new findings were added. So the court's view that these earlier findings were only preliminary and not final until November 17, 1937, is reasonable, and it is within the power of the trial court to say when his decision has been properly filed. This leaves open for consideration the errors assigned by the appellants in addition to the matter of the decree being supported by the pleadings, findings and conclusions.

Some of the undisputed facts out of which this controversy later grew are as follows: The plaintiffs herein, father and mother of the defendant Stephen, in December, 1915, conveyed to him 120 acres of land in Republic county for the consideration of one dollar and love

and affection, and the warranty deed given to him, which was recorded a few days later, contained the following statement: "Except the second party hereby agrees to pay to first parties, or either of them, during their natural life, the sum of $150 in each year." Stephen later married, and about March 1, 1917, decided to purchase the Lahodney tract for $14,000, and to accomplish this purpose he sold part of the 120-acre tract to his brother and the remaining portion of it to his father for a total of $10,000, which enabled him to substantially pay for the Lahodney land with such funds and some borrowed money which his father had helped to secure for him and which in settlement included $300 for two annual payments under the original contract. It was orally agreed between the father and son that the $150 annuity should be transferred from the 120-acre tract to the Lahodney tract, and they entered into the following agreement in writing, signed and sworn to by the plaintiffs and son, on November 20, 1917:

"It is therefore agreed by and between the parties to this agreement that said real estate first described herein (the 120 acres) be released fully and completely from any and all claims by said parties of the first part for the payment of said annual amount of $150, and that said agreement as to the payment of said annual sum as provided in said deed herein described be continued in full force and effect, but to become a lien upon the property last described (the farm bought from Lahodney)."

Stephen and his wife moved on the Lahodney land about the time they purchased it, and made it their homestead until March 1, 1927. In the fall of 1926 the defendants contracted to sell the Lahodney farm for $16,000 and to purchase the McDonald farm for $22,000. The court found that it was orally agreed by the father and son that the lien should be transferred to the McDonald farm. There was sufficient evidence, if believed, to support this finding, and there was evidence to the contrary. A release of the lien on the Lahodney farm was signed by the plaintiffs and they say they also signed the agreement to transfer the lien to the McDonald farm, but it was never signed by the son nor his wife. The son and his wife moved from the Lahodney farm to the McDonald farm about March 1, 1927. It was conveyed to both of them and it has been their homestead ever since. Payments of the $150 annuity were made from time to time until about 1927, when the son's wife refused to make further payments. Sometimes the amount paid was less than $150 if the father asked for only a lesser amount. The

father later found that the transfer of the lien was still at the bank and had not been signed by the son or his wife, and this action was commenced on May 20, 1936, for five years' back payments of annuity, the petition asking for judgment against Stephen and wife and for a judgment lien on the McDonald farm.

The court in its conclusions of law held that the agreement of November 20, 1917, signed by both plaintiffs and by the son, sufficiently reduced to writing the understanding of the parties in reference to the payment of $150 annuity during the lifetimes of the plaintiffs, or the survivor, to fully comply with the statute of frauds. Further, that the contract to pay the $150 is a continuing contract, and recovery may be had for each annuity within five years after the year in which said annuity is due, and that plaintiffs are now entitled to the sum of $1,050, with interest on $750 thereof at six percent from May 20, 1936. The third, fourth, fifth and sixth conclusions of law concern the question of such judgment becoming a lien on the McDonald land. They are as follows:

"No. 3. The original conveyance from John Kalivoda to Stephen Kalivoda being without consideration except for the agreement to pay the $150 yearly, and the sale of that land enabling Stephen Kalivoda to pay for the Lahodney land, and the sale of the Lahodney land in turn enabling Stephen Kalivoda to buy the McDonald land, requires in equity that the court decree a lien on the interest of Stephen Kalivoda at least in the McDonald land to secure the payment of this annuity, or the $150 payment, whatever it may be called.

"No. 4. The right of John and Antonie Kalivoda to the annual payment of $150 is superior to the defendants' claim of homestead in the McDonald land.

"No. 5. Neither the statute of frauds nor the statute of limitation bars the plaintiffs' right to recover annuities due within five years, nor the right to have a lien established against the McDonald farm.

"No. 6. The court finds that it is equitable that an order to sell the McDonald farm should not issue at this time, but that jurisdiction should be retained to enforce the same in the nature of a trust in the land, and the right to appoint a receiver to assume charge of the real estate and do the necessary things to secure payment of the $150 annual payments is reserved."

Judgment was rendered on November 17, 1937, in favor of the plaintiffs and against the son Stephen, in accordance with the above-described findings and conclusions.

As to the action being barred by the statute of limitations and the contract being in disregard of the statute of frauds, the pleadings and the evidence unmistakably show the action against the son covered only a period of five years prior to the filing of the action,

and that the contract was alleged and admitted to have been in writing. So these two assignments of error cannot be maintained. These two grounds are substantially all that are urged against the findings, conclusions and judgment against the son, Stephen, for $1,050, with interest and costs.

The question receiving the most serious attention in this case is whether the plaintiffs have a right to a judgment lien on the Mc-Donald land, the application of the homestead exemption privileges and the matter of joint consent of the son's wife to the transfer of the annuity lien to the McDonald land. The conclusions of law above quoted make the judgment a lien on this land, although there is no writing signed by the son to that effect, and although the ownership of the land is in the name of the son and his wife and it is occupied by them as a homestead. The theory of the plaintiffs is sound and reasonable in their insistent request for a finding that joint consent should have been made from the evidence, if it was not shown to have been in writing. But the court made no such finding, even after its attention had been specifically called to the testimony claiming to have established it. A careful review of the evidence on this subject is not convincing that the court erred in failing to make such a finding. Answers were made to several questions along this line before a ruling of the court was entered sustaining an objection to the question asked, and there was a conflict in the evidence as to such joint consent. Without such joint consent and with the undisputed fact as to the wife's owning the land jointly with her husband we think the right of homestead enters into the feature of even making the judgment a lien on the son's interest in the land. It is suggested that the proceeds of the 120-acre tract, being a gift from the parents, have been traced into the purchase fund of the McDonald place, but without any writing to that effect or a showing that it was borrowed money "for the payment of obligations contracted for the purchase of said premises," as provided by the constitution (art. 15, § 9), there is a homestead exemption if there is no joint consent of husband and wife established.

Appellees cite *Foster v. Bank*, 71 Kan. 158, 80 Pac. 49, and other authorities on this question which make, as above quoted from the constitution, obligations contracted for the purchase of the property a proper exception from the requirement of joint consent.

With the release of the lien on the Lahodney land there was no obligation as to the use of the proceeds thereof except the oral agreement of the son. The continuing annuity is not the purchase money nor the obligation contracted therefor. We think the trial court, without a finding of joint consent, went one step too far in concluding that this obligation of the son was a lien upon the newly purchased land by the son and his wife and occupied by them as a homestead. We find no other errors in the rulings, findings, conclusions or the judgment. The judgment should be modified by eliminating the lien feature thereof, but sustained in all other particulars.

The judgment is affirmed in every respect except as to the lien on the McDonald land, and the cause is remanded with directions to eliminate the lien on that land.