No. 35,634

In the Matter of the Condemnation of Land for State Highway Purposes. (VERN A. ZOOK and NEVA M. ZOOK, *Appellees,* v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*)

(131 P. 2d 652)

Opinion filed December 12, 1942.

*Tom Stratton,* of Osage City, argued the cause, and *Marc Boss,* assistant attorney general, and *John H. Lehman,* of Abilene, were on the briefs for the appellant.

*Paul H. Royer,* of Abilene, argued the cause for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an appeal from a trial held on appeal from

the report of appraisers in a condemnation proceedings for acquiring land for highway purposes.

The condemnation proceedings described the land taken in different tracts. The tracts were all contiguous and it was agreed to treat them as one tract in the amount of 16.315 acres. It was also agreed that fence damage was $488.60. As the case was submitted to the jury the question for determination was the value of the land actually taken for highway purposes, the damage to the farm that was not taken, the damage to fences on account of the taking, and interest from the date of the taking. As has been stated, the fence damage was agreed upon at the outset.

There is no question raised on this appeal as to the value of the land actually taken, nor is there any question raised about the interest item—hence, the only question with which we are concerned is the item that was allowed for damages.

The jury was instructed that the rule for ascertaining these damages was for the jury to find the reasonable market value of the farm before the land was taken, to find the reasonable value after the land was taken, and the difference would be the damage.

The jury found as follows:

"Value of 16.315 acres ................................. $1,044.00
Damages ........................................... 4,202.00
Fence (stipulation) ................................ 488.60
Interest ........................................... 125.03
_____
    Total ......................................... $5,859.63"

Judgment was given accordingly. The motion of the highway commission for a new trial was overruled. The highway commission has appealed.

Two points are argued on this appeal by the highway commission: *First,* that the verdict was a quotient verdict and hence bad; *second,* that the court erred in refusing to give a certain requested instruction.

On the hearing of a motion for a new trial affidavits of several jurors were offered, but when it appeared that these jurors were in the courtroom they were permitted to testify and be cross-examined. The issue of fact was the method used by the jury in arriving at its verdict. The court did not make specific findings of fact on the motion for a new trial but did make a statement which has the effect of a finding of fact. This statement was as follows:

"In a case of this kind, gentlemen, here are a number of items. If the jury should start in on each one of them to each set down the particular amount that he was in favor of allowing, and then if they weren't all identically the same, ballot again, and then keep balloting until the ballots were identical, that jury might have been here yet on that sort of a procedure.

"It doesn't appear in this case that there was an agreement that the quotient obtained as they did obtain it should be their verdict or should be their finding as to that particular item of damages; that was apparently something giving them a starting point to work from. Now then, if it had been their agreement, then after they had found out what that quotient was, there would have been no necessity of their voting as to whether or not that quotient should be their verdict after they had obtained it, and the evidence shows that they did vote as to each quotient after they had obtained it. That tends to negative any contention that there was an agreement, prior to getting this quotient, that that should be their verdict, because if that was the agreement, then it was entirely unnecessary for them to vote that quotient, after they had obtained it; and there is some evidence that there was some discussion about it; then all of these quotients—and that method was apparently followed as to each one—they were added together—with the amount that had been agreed upon for fences—they were added together to make the total verdict, and that was voted upon, and then when the jury came in—and I want the record to show this fact—that the jury were polled not only as to the general verdict but as to their special verdicts, and each one of them answered that that was his general verdict and their special verdicts. That is in the record."

The rule as to whether the verdict is a quotient verdict is as stated by the trial court in the above remarks.

In *Hamilton v. Railway Co.*, 95 Kan. 353, the court held:

"A judgment will not be reversed because the jury resorted to the process of addition and division, without any agreement that the result of such addition and division should be the verdict, where the jury afterwards deliberated further and agreed upon a verdict." . (Syl. ¶ 5.)

In the case of *Smith v. Railroad Co.*, 108 Kan. 151, the court said:

"However, there was a disagreement in the evidence as to just what occurred. As much of it was oral and passed upon by the trial court, and as the evidence is not clear upon the question whether the agreement was understood and entered into by all the jurors that the quotient arrived at should be the verdict, we think it cannot be said that it was a quotient verdict." (p. 159.)

In *Ewing v. Railroad Co.*, 117 Kan. 200, the court said:

"On the hearing of the motion for a new trial, the plaintiffs introduced the affidavits of a number of jurors which tended to show that in the determination of the answers to the questions some were first agreed to by a majority vote. There is nothing to show that the jury had agreed to adopt the decision of the majority, and there is nothing to show that after the majority had agreed the others did not consent thereto. . . . The verdicts with the an-

swers to the special questions were returned and read in open court and were received as the verdicts and the answers of the jury. If there had been any dissent from any juror, neither verdicts nor answers would have been received." (pp. 204, 205.)

The argument of the state highway commission is in effect that we should reëxamine the evidence of these jurors and reach a different conclusion as to the facts than was reached by the trial court. We cannot do that. The trial court had the opportunity to see the witnesses and was familiar with the general background and all the surrounding facts and circumstances, and was far better able to tell whether the jury had agreed, before the process of addition and division was gone through with, that the result should be the verdict. If they had not so agreed, but merely took the method of computation as to getting figures from which to start their deliberations, then the verdict should stand.

The highway commission asked that the jury be instructed that "benefits that are the direct and special result of the condemnation should be taken into consideration by the jury and the verdict reduced thereby, but that any benefit which the landowners received in common with the rest of the public should not be considered."

This road cut clear through the farm of the landowner. The special benefit which caused the state to ask for this instruction was a stock pass that a state highway engineer testified would be installed upon this highway at a place where the highway crossed a ravine. The court did not err in refusing to give this instruction because there was no testimony in the record that the state highway commission was bound to build this cattle pass, nor was there any testimony that the building of the stock pass would be any benefit to the farmer, and no testimony offered which the jury could use as a basis for a finding that it would be of any benefit to the farmer. A finding pursuant to such an instruction, should one have been given, would have been based necessarily on conjecture by the jury.

We have concluded that no error appears in this record and the judgment of the trial court is affirmed.