IRA M. FOSTER, LAURANCE L. WILSON, and M. S. LOOMIS, *Appellees* and *Cross-Appellants,* v. THE CITY OF AUGUSTA, KANSAS, a Municipal Corporation, *Appellant* and *Cross-Appellee.*

No. 38,892

CATHERINE CARTER, *Appellant,* v. THE CITY OF AUGUSTA, KANSAS, a Municipal Corporation, *Appellee.*

(256 P. 2d 121)

Opinion filed April 11, 1953.

*R. A. Monroe*, of Augusta, and *George J. Benson*, of El Dorado, argued the cause, and were on the briefs for the appellant and cross-appellee in case No. 38,898, and for appellee in case No. 38,892.

*John F. Eberhardt*, of Wichita, argued the cause, and *J. B. McKay* of El Dorado, and *George Siefkin, George B. Powers, Samuel E. Bartlett, Carl T. Smith, Stuart R. Carter, Robert C. Foulston*, and *Malcolm Miller*, all of Wichita, were with him on the briefs for the appellees and cross-appellants in case No. 38,898, and for appellant in case No. 38,892.

The opinion of the court was delivered by

WERTZ, J.: These consolidated four cases are the fourth appearance in this court involving the parties in their actions to recover damages from the City of Augusta alleged to have resulted to their property by reason of the construction of a flood control levee under G. S. 1949, 12-635 *et seq.* The legal and factual background of these consolidated appeals is set forth in our three former opinions in *Loomis v. City of Augusta*, 151 Kan. 343, 99 P. 2d 988; *Foster v. City of Augusta*, 165 Kan. 684, 199 P. 2d 779, and *Foster v. City of Augusta*, 170 Kan. 5, 223 P. 2d 730, and need not be repeated here.

In the last of those prior decisions we held the plaintiffs' petition stated a cause of action and plaintiffs were entitled to recover judgment if able to prove their lands had in fact been damaged by reason of defendant's flood control levee. Accordingly, the two basic issues in the court below were: (1) Whether plaintiffs' lands were damaged by reason of the levee and, if so (2) the difference in value of the land of each plaintiff immediately before and immediately after the construction of the levee.

Subsequent to the last opinion in these cases, the trial court consolidated the actions and they were tried by the court without a jury. At the conclusion of the evidence, the court made findings of fact and conclusions of law in each case, finding that the lands of each of the plaintiffs had been damaged, and in case No. 38,898 rendered judgment in favor of plaintiffs Foster, Wilson and Loomis, and in case No. 38,892 rendered judgment in favor of the City of Augusta on the theory that while the Carter land had been damaged, Mrs. Catherine Carter, having but a life estate in said land, had not suffered any damage.

From the judgment rendered in favor of the plaintiffs in the first three cases, the city appeals, and plaintiffs cross-appeal on certain issues, and from the judgment in favor of the city as against Catherine Carter, she appeals, each assigning certain specifications of error, which will be hereinafter taken up in the proper sequence.

For the purpose of clarity, we will hereinafter refer to appellees and cross-appellants Ira M. Foster, Laurance L. Wilson, M. S. Loomis and Catherine Carter as plaintiffs, and appellant and cross-appellee the City of Augusta, as defendant, or city.

At the outset plaintiffs, as cross-appellants, challenge the right of the city to be heard on certain asserted errors, on the ground the city failed to file their motion for new trial within the three day limit required by statute (G. S. 1949, 60-3001 and 60-3003), after the court had filed its findings of fact and conclusions of law on April 21, 1952, so there would be nothing that could come up on their appeal except the question as to the sufficiency of the findings and conclusions to support the judgment. (*Benson v. Rosebaugh,* 128 Kan. 357, 278 Pac. 41.)

Findings of fact and conclusions of law were filed April 21, 1952. The city within three days filed in each case, except the Carter case, a motion to vacate, modify and set aside certain findings and conclusions, and plaintiffs Loomis, Foster and Wilson each filed motions

for judgment upon the findings of fact and conclusions of law. Plaintiff Carter filed her motion to vacate and set aside the second finding of fact and the conclusion of law applicable to her case, and for judgment on other factual findings.

On May 14, 1952, the trial court after a hearing on the mentioned motions made certain minor corrections in its findings and over-ruled the motions of the city and Carter, and sustained the motions of plaintiffs Loomis, Foster and Wilson, and entered judgment in accordance with its findings and conclusions in each case.

Thereafter on the same day the city for the first time filed a motion for a new trial, which was presented and argued over plain-tiffs' objections that the motion was not filed within three days from April 21, 1952.

Counsel for the plaintiffs are correct as to the rule that the an-nouncement of findings of fact and conclusions of law constitutes the decision of the court within the meaning of the code requiring a motion for a new trial to be filed within three days after the deci-sion is rendered. (*Kalivoda v. Kalivoda,* 148 Kan. 238, 240, 80 P. 2d 1050.) When this matter was presented and urged by plain-tiffs before the trial court, the court denied the motion, but not on this ground, stating:

"Gentlemen, on these motions, I naturally thought I was rendering judgment at that time when the motion came on for me to render judgment on my find-ings, and conclusions of law, but under that theory, there wasn't any judgment rendered until today."

It is apparent that it was not the understanding of the trial court that his findings and conclusions filed April 21, were to be final and in effect the filing date on those findings was canceled. The trial court is the one to say whether its preliminary findings are to be final. They and the conclusions, when complete, constitute the decision of the court, and the trial judge is the one to say when his decision is rendered. (*Kalivoda v. Kalivoda,* supra.)

In the instant case, the court said "There wasn't any judgment rendered until today." (May 14, 1952.) This court long ago an-nounced and has repeatedly followed the rule that within the same term at which a judgment was rendered the trial court has absolute power over it, and may modify, alter, change or vacate it, in whole or in part. (*The State v. Langmade,* 101 Kan. 814, 168 Pac. 847; *Rasing v. Healzer,* 157 Kan. 516, 142 P. 2d 832; *In re Estate of Ellis,* 168 Kan. 11, 26, 210 P. 2d 417.) If we were to

hold that the trial court intended that its findings and conclusions, filed April 21, were to be final and amounted to a decision, the foregoing quoted language of the court was tantamount to vacating such decision, and refiling its findings and conclusions, and entering judgment on May 14, 1952. We will, therefore, consider the city's motion for new trial as filed within the statutory time.

The city complains that plaintiffs failed to sustain the burden of showing, by a preponderance of the evidence, that their land was damaged, and that their evidence was based on speculation and conjecture. After reviewing the record of more than 100 pages of narrated testimony covering the question of damages, we are unable to agree with the city's contention. The trial court made somewhat exhaustive findings of fact relating to the mentioned question, finding that after the construction of the levee, all water which would normally flow over and cover the land east of the levee was held back by the levee on the land west of the levee and east of the high bank of the west side of the Whitewater River; that the construction of the levee narrowed the river valley so that the water would become deeper, and would flow with higher velocity in times of heavy rainfall and floods, which would cause more washing or scouring of the land and would hold it back until it could not all escape through the channel of the river unless it became high enough to flow over the Frisco railroad embankment or grade, and at such times the fall of the water over the grade washed the ballast of the railroad track out on the land of plaintiff Wilson and caused more washing and scouring of the land, due to the fall over the railroad tracks.

Two expert witnesses testified for the plaintiffs, one a registered civil engineer with thirty-eight years experience, approximately three-fourths of which time was devoted to flood control problems, and one consulting engineer with over forty years experience with particular training in flood control, drainage and irrigation. These engineers testified at length and in detail that the plaintiffs' lands were damaged. They made a survey of the area in question, ran levels and prepared maps and profiles showing the drainage area of the Whitewater River and its tributaries, indicating the effect upon plaintiffs' lands by reason of the levee in time of flood; that the levee divided in half the natural drainage area for overflow waters from the Whitewater River, and that following construction of the levee, the area to the west where plaintiffs' lands are located must carry twice the water it formerly did, necessarily increasing

both the height and velocity of flood waters on plaintiffs' properties, and swiftened the current and resulted in scouring of the land; that the levee as constructed changed the normal flood plain, and that by reason of the levee in times of heavy floods, the water would be held on plaintiffs' lands longer than it would have been had the levee not been built.

Plaintiffs and a number of other witnesses living in the vicinity of the levee testified as to the damage done to the plaintiffs' lands, and it would serve no useful purpose to set forth that evidence here at length. Suffice it to say that we have carefully examined the evidence and we find an abundance of substantial testimony supporting the plaintiffs' claim that their lands were damaged by reason of the construction of the levee; that the levee will inevitably cause flood waters to be impounded on their property in far greater depths and for a considerably longer period of time, and that such waters will possess appreciably higher velocity and scouring attributes than would be true in the absence of the levee. Defendant's contention that plaintiffs' evidence was speculative, remote and conjectural, is without merit.

The city next contends that the trial court rendered a quotient decision predicating its position upon the fact that the judge, in arriving at the damages sustained to the land of each plaintiff, first determined an average of the damages as testified to by all the witnesses.

The formula used by the court in arriving at the judgment, as to the damage to each separate tract of land, may be summarized as follows: Add the values placed upon each separate tract before the levee was constructed, as testified to by all the witnesses for both plaintiffs and defendant. Divide the result by the number of witnesses, then add the value of each tract just after the levee was constructed, as testified to by all the witnesses for both plaintiffs and defendant. Divide the result by the number of witnesses, then subtract the latter sum from the first sum, and the result is the amount of damages found by the court as to each separate tract of land.

The iniquity which impeaches "quotient" verdicts is not the process of averaging damage estimates in arriving at a conclusion, but in agreeing *in advance* to be bound by the unknowable amount which such process may produce. The rule is well-stated in 39 Am. Jur., New Trial, 134, § 124:

"The impropriety of a quotient verdict consists not in the method or the result, but in the previous agreement to be bound by the result of the quotient

process. The existence of such an agreement is the test in criminal prosecutions as well as in civil actions. If there was no agreement between the jurors, a new trial will not be ordered because, in the course of reaching the amount of the verdict, the sum of the amounts representing the views of the several individuals was divided by twelve and, upon consideration, the quotient was agreed upon as the verdict."

To the same effect, see 66 C. J. S., New Trial, 188, § 59.

Quotient verdicts are frequently denominated "gambling" verdicts. (53 Am. Jur., Trial, 711, § 1030.) This is because at the time the advance agreement is made no juror can possibly know the ultimate figure to which he thereby commits himself. Not only does such prior agreement bind the juror to accept whatever the ultimate quotient may prove to be, regardless of whether or not it then appears fair and reasonable, but it vests in each individual juror power "to make the amount of the verdict unreasonably great or small as he may desire." If, however, there is no antecedent commitment to be bound by the quotient figure, resort to the averaging process is entirely permissible. (53 Am. Jur., *supra*, 712, § 1031; 66 C. J. S., *supra*, 188; *Schaake v. Railway Co.*, 102 Kan. 470, 170 Pac. 804; *Broadie v. Randall*, 114 Kan. 92, 216 Pac. 1103; *Claggett v. Phillips Petroleum Co.*, 150 Kan. 191, 92 P. 2d 52; *Zook v. State Highway Comm.*, 156 Kan. 79, 131 P. 2d 652.

Research by counsel for the parties state they have been unable to find but one case where the courts of our land have been asked to apply the quotient verdict rule to a trial judge's decision, and in our limited research we have found no other case. In *Beasley v. Beasley*, 256 Ala. 647, 57 So. 2d 69, the Alabama court pointed out that the trial judge's remarks showing the basis on which his conclusion of fact is founded is no part of the judgment, and while it may have some influence in determining whether the judgment is properly supported by evidence, it is not controlling. The question for appellate review is whether the judgment is correct, not whether the grounds on which it professes to proceed is tenable.

We stated in *Shelley v. Sentinel Life Ins. Co.*, 146 Kan. 227, 69 P. 2d 737:

"Remarks of a trial court indicating its theory or reasoning in arriving at a judgment form no part of the judgment and cannot limit or narrow the judgment actually rendered." (Syl. ¶ 3.)

See, also, *Wyatt v. Taylor*, 166 Kan. 453, 458, 201 P. 2d 647.

In the instant case, there is nothing in the record to support the city's assumption that the court did not consider the reasonableness

or unreasonableness of the testimony of the witnesses as to the value of the land before and after the construction of the levee. We cannot presume from the mere fact that the trial judge averaged the damage testimony in the course of determining the amount of his judgment, that he violated his judicial duties and failed to consider the evidence in accordance with his duty. The presumption is to the contrary, *i. e.*, that in the absence of anything affirmatively appearing to the contrary, it must be presumed that the trial court disposed of each and every issue, both of law and of fact, submitted to it in the case giving due consideration to the evidence, and that his action was regular and in accordance with the law. (*In re Wright*, 74 Kan. 409, 89 Pac. 678; *Donaldson v. Cox*, 103 Kan. 791, 176 Pac. 647; *Rothman v. Globe Construction Co.*, 171 Kan. 572, 235 P. 2d 981; 3 Am. Jur., Appeal and Error, 489 *et seq.*, §§ 923-954.)

It may be noted here that when the question of quotient verdict was raised in the court below, the trial court stated:

"I did arrive at it in that manner and when I did that I was satisfied with it and thought I was being fair to everybody concerned; still think so."

It is a rule of this court that whether a verdict was or was not a quotient verdict is a question of fact for the trial court to determine (*Fitch v. State Highway Comm.*, 137 Kan. 584, 587, 21 P. 2d 318; *Claggett v. Phillips Petroleum Co.*, supra, 201, 202), and the judgment having been entered and approved by the trial court in the instant case, this court will not disturb the judgment on that account.

The city's complaint that the court erred in the admission of certain evidence, and that the judgment in each case was excessive, has been considered by this court and held to be without merit.

It is next contended by the plaintiffs and cross-appellants here that the trial court erred in failing to allow interest on each of the judgments from the 21st day of October, 1936, the date when the levee was commenced, to the date of judgment. The city contends that interest was not recoverable prior to the final judgment since the damages were unliquidated. The trial court refused to allow interest antedating the judgment, from which ruling the plaintiffs appeal. Plaintiffs concede that in ordinary contract and tort actions, interest upon unliquidated damages is not recoverable, but in compensation proceedings where no wrong is committed by the city, and recovery is sought by way of compensation for damages sustained from defendant's authorized construction, a contrary rule

obtains, and interest is allowable from the date the appropriation or damage occurs.

It must be kept in mind that the city in the construction of this levee did not exercise any right of eminent domain as against these plaintiffs, and that these proceedings are not based on any condemnation by the city. In *Foster v. City of Augusta,* 165 Kan. 684, *supra,* we held there was no taking of the property of the plaintiffs by the exercise of the right of eminent domain. Therefore, these cases are not governed by the law of eminent domain, but are based on G. S. 1949, 12-635 *et seq.,* and more particularly section 12-639, which provides for considering the class of claims not recoverable under eminent domain. The pertinent part of such section reads as follows:

"That the governing body shall appoint three disinterested householders of the said city to assess all damage to any and all property that will be injured or damaged by reason of said improvement. . . . Said appraisers, . . . shall personally view, inspect and examine all lots and pieces of ground . . . and all other property liable to be injured or damaged by reason of said improvements being made."

The foregoing statutes authorized the construction of the levee and the allowance for damages when such damages are finally determined.

We said in the last mentioned case that each of the plaintiffs' petitions was framed as a common law action for damages. Before a rendition of judgment, interest is not recoverable on unliquidated damages which are not ascertainable by computation, based on some fixed standard of measurement. (*Lower v. Shorthill,* 103 Kan. 904, 176 Pac. 647.) It is clear that the actions for damages to the lands of each of the plaintiffs are in tort, unliquidated, and not ascertainable by computation until the date the court entered its judgment. It follows that the court did not err in refusing to allow interest antedating its judgment.

Plaintiff and cross-appellant Carter asserts the trial court erred in refusing to render judgment in her favor for the damage done to the land of which she was the owner of a life estate.

As hereinbefore related, plaintiff Carter produced evidence showing the land, in which she had a life estate, suffered the same type of damage as the property of her co-plaintiffs, and the trial court expressly found that the Carter land was damaged by the levee in the amount of $2,885.71. However, the court also found that there was no evidence that the construction of the levee caused any

damage to her life estate. It was stipulated that Mrs. Carter was born February 7, 1857, and that in May, 1936, when construction on the levee was commenced, she had a life expectancy of 5.38 years, and according to the mortality tables (58 C. J. S. 1212), she had a life expectancy of 1.63 years at the time the judgment was entered in this action. She contends that under the court's findings as to the damage to the real estate she, as life tenant, was entitled as a matter of law to judgment in an amount equal to the legal rate of interest (6% per annum) on $2,885.71 for the period of her life expectancy which would constitute her recovery for the injury to her life estate. She concedes that she may recover only for the injury to her life estate and not the full $2,885.71 damage to the land, and also contends that the court erred in holding that it was her duty to prove the rental or use value of the land in order to establish the amount of her recovery.

We cannot agree with that portion of the court's finding that there was no evidence that the construction of the levee caused any damage to her life estate, in view of the court's finding that the land was damaged in the amount heretofore specified. While this is not an action under the eminent domain statutes, the following general rule is, by analogy, applicable here. In *City of St. Louis v. Rossi*, 333 Mo. 1092, 64 S. W. 2d 600, it is stated:

"The well-established general rules of eminent domain seem to be that, when a piece of property is taken in which the ownership is divided into several interests, that as between the public and the owners, it is considered one estate; that the public right is exercised upon the land itself without regard to the subdivisions of interest; that the amount of the value of the land to which each one of the owners of the interests is entitled is no concern of the condemnor; that the various owners' interests in the property are transferred to the fund, allowed as damages to compensate them for the injury to the land, which is substituted for the property taken; that the value of the property taken is all that the condemnor must pay, and this value cannot be increased by any contracts or distribution among the different persons owning interests in it; and that the sum of all the parts cannot exceed the whole. These principles seem to be supported by the following cases: (Citing innumerable decisions and secondary authorities from many states) . . .

". . . 'The various elements of the ownership of modern city property are so numerous and so complex that if commissioners were compelled to segregate and value separately each particular interest therein, their work being frequently halted to await settlement in court of the controversies that inevitably arise among the owners of the interests, there would be no end to a condemnation proceeding such as the one here involved . . .'

"The result of that case was that this court approved the method there adopted by the commissioners of assessing one sum for the damages to all the

owners of each lot or tract taken, leaving the owners of the fee, lessees, trustees, mortgagees, and sublessees to apply to the circuit court for apportionment of the damages between them according to their various interests. . . ."

To the same effect, see *Grand River Dam Authority v. Gray*, 192 Okla. 547, 138 P. 2d 100, holding that it was erroneous to introduce testimony regarding the "use value" of a life estate, the proper procedure being to ascertain the total damages to the condemned property and then allocate to the life tenant her proper portion thereof.

Our legislature apparently had in mind the foregoing rule of law when it enacted G. S. 1949, 12-639, as the substance of that section is that the appraisers are to assess all damage to any and all property [not the injuries sustained by the owners of the various interests therein] that will be injured or damaged by reason of said improvement. . . . Said appraisers shall personally view, inspect and examine all lots and pieces of ground . . . and all other property liable to be injured or damaged by reason of said improvements being made, and after such appraisal is made and filed, section 12-641 provides that the governing body of the city shall hold a hearing to hear any and all objections that may have been filed as to the final amount of damage awarded by the appraisers against each tract or other property, and when they have determined the amount of damage to the lands and other property, they shall enter an order confirming the same.

Under the weight of authority, the damages shall be assessed to the entire tract, with questions of apportionment between owners of the several interests therein to be subsequently determined when such questions arise. There can be no justification for holding that the life tenant's damage on appeal must be based on proof of rental or use value of the life tenant's estate.

On the question of apportionment, we held in the somewhat analogous case of *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 154, 40 P. 2d 463, that where the life tenant and remaindermen join in an oil and gas lease, they may agree as to division of lands and royalties, and in the absence of agreement the life tenant is entitled either to have the royalties invested and to receive income therefrom, or to receive an apportionment of the royalties dependent on the value of his expectancy. The case quotes from *Barnes, et al., v. Keys, et al.*, 36 Okla. 6, 127 Pac. 261, 45 L. R. A., n. s., 178, as follows:

"Where the owners of a life estate and the owners of the remainder join in an oil and gas mining lease, and the lessee develops the lease and produces oil, the life tenants are entitled either to have the royalties invested and to receive

the income therefrom, or to receive such a proportion of the royalty as will amount to the present value of an annuity for the life expectancy of the life tenant equal to the interest on the royalties at 6 per cent." (Syl.)

In view of what has been said, the trial court having found the total damages to the Carter land amounted to $2,885.71, should have applied the customary formula of legal interest (6 percent per annum) thereon, times Mrs. Carter's life expectancy of 1.63 years (her expectancy from the date of the judgment May 14, 1952) when the amount of damages were ascertainable, and rendered judgment in the amount of $282.22. It, therefore, follows that in case No. 38,898, the judgment of the lower court is affirmed, and in case No. 38,892, the judgment of the lower court is reversed, and the case is remanded with instructions to enter judgment in favor of Catherine Carter and against the City of Augusta in the amount of $282.22, and costs.

It is so ordered.

THIELE, J., withholds approval of paragraph five of the syllabus and corresponding portion of the opinion, and concurs in the remainder.