No. 21,882.

EDSON EMERICK, *Appellee* v. THE JONES MOTOR CAR COMPANY and J. J. JONES, *Appellants*.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Collision between Truck and Motorcycle—Injuries—Verdict—Passion and Prejudice Not Disclosed.* The result of a collision between defendants' 4,400-pound truck and a motorcycle driven by plaintiff, was the loss of plaintiff's leg above the knee joint. Plaintiff was 22 years of age, and before the injury was strong and vigorous, and was earning $10 a week as a bank clerk. The jury returned a verdict for $26,000. The court required plaintiff to remit $11,000, overruled the motion for a new trial, and rendered judgment for $15,000. *Held,* that the record does not disclose that the verdict was the result of passion and prejudice.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed January 11, 1919. Affirmed.

*J. D. Houston, C. H. Brooks, F. B. Stanley, C. C. Stanley,* and *B. F. Hegler,* all of Wichita, for the appellants.

*Clyde E. Souders,* and *Otto R. Souders,* both of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was for damages for personal injuries resulting from defendants' negligence. Plaintiff recovered, and the defendants appeal.

The defendants operated a factory some distance north of the city of Wichita, and carried some of their employees from Wichita to the factory and back again by means of a large motor truck. It was charged in the petition that on February 9, 1917, at about 6 o'clock in the morning, plaintiff was riding a motorcycle coming south along the west side of a road known as Lawrence avenue, leading into the city of Wichita, when defendants' truck going north on the east side of the roadway suddenly passed over to the west side and ran into plaintiff's motorcycle, by which he sustained injuries resulting in the loss of one leg. The answer alleged that defendants' truck was properly traveling on the east side of the roadway,

that plaintiff was wrongfully on that side and ran into the truck.

There was a wide conflict in the evidence. The plaintiff and a young man who was riding behind him on the motorcycle testified that the speed of the motorcycle was 15 to 20 miles an hour; that they saw the truck approaching, but thought it was farther away; that the truck appeared to be coming directly up the center of the road; and that a few feet before they came together, the truck swung toward them to the west side of the road.

Plaintiff's other witnesses concerning the accident were three persons who were about 200 feet from the place, and another who drove up just after the accident. They testified, in substance, that they traced the truck by its tracks from where it backed up after the collision, and these showed it had gone clear to the west side of the roadway; also that the blood on the ground and the broken glass from the windshield of the truck were on that side of the road.

The defendants' witnesses were the driver of the truck and ten others of the twenty-nine persons on the truck at the time of the accident. The driver testified that the truck, which weighed 4,400 pounds, was traveling at the usual speed of from 10 to 12 miles an hour, and was all the time on the east side of the road; that he first saw the plaintiff nearly a half mile away coming on the east side of the road; that when he saw that plaintiff was not going to turn out, he turned still further to the east in order to avoid a collision, and used all the power at his command in trying to stop instantly; and that to the best of his opinion the motorcycle was traveling about 35 or 40 miles an hour. He testified that the tracks of the truck on the west side of the road were occasioned by his effort to turn around after the accident for the purpose of taking plaintiff to a hospital; that just as he got across the center of the road, other cars came up and other persons offered to take plaintiff away; that the witness then backed the truck to the east side of the road; and that the glass in the windshield which had been shattered by the collision fell out on the west side of the roadway while he was attempting to turn around. His statements were corroborated by the ten other witnesses.

The physicians who attended and operated upon the plain-

tiff testified to a scalp wound six or seven inches long across plaintiff's head into the bone, but the bone was not fractured; the break in the thigh was a compound comminuted fracture. The wound on the head was sewed up and the limb placed in a temporary splint for observation to discover whether the blood vessel was.involved, and the case was allowed to rest until the physicians were satisfied that amputation was necessary; the accident happened on Friday, and the limb was amputated on Sunday. The plaintiff was unconscious when the physicians first saw him, and the wound was sewed up and dressed without an anæsthetic. At the second operation an anæsthetic was used. The plaintiff was in the hospital for four weeks; had some "little trouble that did not heal," and for a while he came back every day, and after that every three or four days; it finally healed up sometime about the middle of the summer. The physicians testified, also, that about an eight-and-a-half inch stump was left on the thigh, and that in such a case a wooden leg can be easily adjusted, as well as it is possible to adjust an artificial limb.

The jury returned a verdict in plaintiff's favor for $26,000, and made a number of special findings, all of which were against the contentions of the defendants. There was a motion to set aside certain of the findings as against the evidence, and for a new trial on the ground that the verdict was against the evidence and was the result of prejudice and passion and misconduct of the jury. On the hearing of the motions, affidavits were presented to show misconduct of the jury, and counter affidavits were filed by the jurors. The alleged misconduct of the jury goes out of the case because the conflicting evidence has been passed upon by the trial court in overruling the motions. In passing upon the motion for a new trial, the court required the plaintiff to remit $11,000, which was done, and the court overruled the motion and entered judgment for the sum of $15,000.

There is some contention that the findings are not supported by sufficient evidence, and that they are contrary to the evidence, but the argument resolves itself into a mere discussion of the weight of the evidence. Since it cannot be said that there was not some testimony to support the findings, we pass to a consideration of the real question, which is whether the

verdict appears from the record to be the result of prejudice and passion.

At the time he was injured, plaintiff was a strong, healthy man, 22 years of age, a high-school graduate, and was employed in a bank, where he received wages of $10 per week. The defendants insist that the amount of the verdict, together with the great reduction which the trial court required before it would refuse a new trial, and the whole record, establish the fact that the verdict was the result of passion and prejudice.

In *A. T. & S. F. Rld. Co. v. Cone,* 37 Kan. 567, 15 Pac. 499, the injuries sustained by plaintiff were substantially those suffered by plaintiff in the present case. The jury returned a verdict for $50,000, and the court required a remittitur of $25,000. It was held to be obvious that the court must have found that the verdict was rendered under the influence of passion and prejudice. The jury, however, had manifested in another way its prejudice, by answering "don't know" to several special questions properly submitted by defendant and upon which there was evidence which would have supported a finding either way. In reversing the judgment, stress was laid upon the conduct of the jury, which, with the excessive amount of the verdict and the large reduction required by the trial court, was held to show prejudice and passion.

The attitude of the court in determining this question, and the rules which generally control, are quite fully set forth in the opinion in *Argentine v. Bender,* 71 Kan. 422, 80 Pac. 935, (a suit for personal injuries against a city) where the verdict was for $7,500, and the trial court required plaintiff to remit two-thirds of the amount, but made a finding or statement that the error of the jury in fixing the amount of the damages did not permeate the entire verdict, but only affected the amount. By a divided court, it was held that prejudice and passion did not appear. The opinion cites the former decisions establishing these principles:

(1) "That the allowance of excessive damages, not occasioned by passion or prejudice, does not require a new trial, but may be remedied by the remission of the excess"; (2) "that any excess due to unfairness of the jury is incapable of elimination by this means, and vitiates the entire verdict." (p. 424.)

In the opinion it was said:

"This court must enter upon the consideration of this case with the assumption that the evidence could not sustain the recovery of a greater amount than $2,500. This is conclusively settled for the present purpose by the action of the district court. The mere fact that the jury in estimating plaintiff's injury so far exceeded this limit must be regarded as having some tendency to show unfairness. If aided by anything in the evidence or elsewhere in the record tending in the same direction, or possibly if not offset by something of a contrary tendency, this fact alone might justify a conclusion that the jury were influenced by passion or prejudice, and require a reversal. On the other hand, the very great departure from a proper amount should be otherwise accounted for, if a reasonable basis for so doing can be found." (p. 425.).

In casting about for some theory upon which to explain the action of the jury without imputing to them unfair motives, the court found it in the "meagerness of the instructions given to them as a guide to the amount of recovery." (p. 425.) By a divided court, the judgment was affirmed.

Again this court divided upon the question in *Lupher v. Railway Co.*, 86 Kan. 712, 122 Pac. 106, where the trial court refused to approve a verdict for $17,000 for the loss of a leg and required plaintiff to remit $4,000 and rendered judgment for $13,000. The majority held that there was nothing to show that the excessive amount was caused by passion or prejudice of the jury. We find difficulty in drawing any distinction between that case and the present one. We must start with the assumption that the trial court, placed in a position far more favorable than is this court for discovering whether or not the original verdict was tainted with prejudice and passion, determined that question against the defendants' contention, holding, however, that the amount of the judgment was excessive. In such a situation, it becomes the first duty of the trial court to determine whether the excessive verdict has been rendered as a result of prejudice and passion which deprived the defeated party of a fair trial; and where the court has reason to believe this to be the case, the taint cannot be removed, nor the error cured, by merely reducing the verdict to an amount which the court thinks would compensate the injured party, if he is entitled to recover.

The numerical weight of the positive testimony was largely in favor of the defendants as to the manner in which the accident happened. This is the only circumstance apparent from

the printed record, aside from the amount of the judgment and the very large amount of the reduction, which may be said to make the question somewhat close. Here, again, we are confronted with the fact that the trial court saw and heard the witnesses and must have been convinced that the error of the jury in fixing an excessive amount of damages did not permeate the entire verdict. We conclude that it is our duty to affirm the judgment, and it is so ordered.