No. 38,024

PAUL FLAHARTY, *Appellee*, v. WAYNE REED, *Appellant*.

(225 P. 2d 98)

Opinion filed December .9, 1950.

*Simeon Webb,* of Pittsburg, argued the cause, and *F. H. Richart,* of Joplin, Mo., and *Charles W. Hill,* of Pittsburg, were with him on the briefs for the appellant.

*Ben W. Weir,* of Pittsburg, argued the cause, and *H. Gordon Angwin,* of Pittsburg, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This is an action for damages alleged to have been sustained by plaintiff when a car left standing on a highway by defendant was struck by another car and driven against plaintiff.

This is the second time this case has been before this court. In the first case the trial court overruled defendant's demurrer to the petition and the defendant appealed and we affirmed the judgment of the lower court. (See *Flaharty v. Reed,* 167 Kan. 319, 205 P. 2d 905.)

The petition alleged federal highway No. 160 extended west from the city of Pittsburg, Kan.; was paved and used extensively by automobiles; that at the place described it was paved with black top to

a width of approximately twenty-four feet; that about 2:20 a. m. on March 18, 1946, defendant parked his car on highway 160 in a negligent manner; that at that time plaintiff was walking on the north shoulder of the highway and had reached a point about fifteen or twenty feet west of the defendant's automobile when an automobile driven by one May in a westerly direction along the highway struck defendant's car and knocked it in a northwesterly direction against the plaintiff, injuring him so that his left leg later was amputated; that his injuries were caused by the negligent acts of the defendant in that he parked his automobile on the north side of the pavement while it was headed in a southeasterly direction so that it covered the entire north half of the paved portion and the front part extended half way across the south half of the pavement; that it was parked outside the business or residential area of a city in such a position that there was less than twenty feet of the pavement opposite it free and unobstructed for the passage of other vehicles and there was not a clear view of it from a distance of 200 feet in each direction, all in violation of G. S. 1947 Supp., 8-570; that defendant negligently parked his car in such a manner between the hours of one-half hour after sunset and one-half hour before sunrise without showing any lights, as provided by G. S. 1947 Supp., 8-586; that defendant's automobile at the time was not in the act of towing any vehicle, was not disabled and was parked at such an angle that it presented the appearance of a dark object and was not visible in the darkness from a sufficient distance to enable the drivers of other automobiles using the highway to avoid striking it and such drivers were misled and confused as to whether it was on the north or south portion of the pavement and that such hazardous condition was the proximate cause of the collision of the automobiles, which caused plaintiff's injuries; that defendant negligently failed to use ordinary care and prudence for the safety of others using the highway; that he failed to place warning flares or other signals on the highway and defendant knew there were several people walking or standing on the highway and let his automobile remain stopped and parked in that position.

The petition then alleged various items of damages to plaintiff. The prayer was for $48,544.64 damages.

To this petition the defendant answered first with a general denial. The defendant then alleged that if plaintiff suffered any damages they were not the result of defendant's negligence; that plaintiff had driven his tractor from his home to the scene of the accident.

The plaintiff knew there were cars upon the highway but drove his tractor without proper lights to the scene of the accident; parked his tractor upon the highway facing west and within three or four feet of defendant's car, which was parked at that time helping to remove a car from the ditch; that if the plaintiff suffered any damages his own negligence was the proximate cause of such injuries because he negligently failed to keep a reasonable lookout for vehicles being driven upon the highway; that he negligently parked his tractor in such a manner that it was headed in a westerly direction without being equipped with a lighted rear lamp, in violation of G. S. 1947 Supp., 8-583 and 8-586; that he negligently parked his tractor so that it presented the appearance of a dark object and was not visible to drivers approaching from the east; that he negligently failed to use ordinary care for the safety of himself and others using the highway; that he failed to place warning flares or other signals on the highway and that he knew at the time it was a much used highway. The answer further stated that if plaintiff's injuries were not proximately caused by his negligence, then they were caused by the negligence of May, the driver of the car which hit the automobile of defendant, and that if plaintiff suffered any damages they were not the result of any negligence, want of attention or omission on the part of this defendant but were solely the result of an accident. The answer also alleged that plaintiff had been paid $4,500 in full accord and satisfaction for any damages he had sustained.

The plaintiff replied denying that he had been paid by May in full but alleged that the payment he had received from May was only a partial payment and that he had executed a release by the terms of which he reserved unto himself his claim for damages against defendant and denying all allegations in the answer inconsistent with the allegations of his petition. At this stage the defendant filed a motion for judgment on the pleadings because the reply failed to deny the allegations in the answer that plaintiff carelessly parked his tractor on the highway, which negligent acts directly contributed to his injuries. This motion came on to be heard on December 13, 1949. At that time the trial court allowed the plaintiff to file an amended reply in which he denied every and all the material allegations of the answer.

The issues were submitted to a jury and at the conclusion of plaintiff's evidence the defendant demurred to it on the ground that it did not prove any cause of action in favor of the plaintiff and against the

defendant. This demurrer was overruled. At the conclusion of all the evidence defendant filed a motion for a directed verdict for about the same reason. This was overruled and the jury returned a verdict as follows:

"We, the Jurors impaneled and sworn in the above entitled case, do on our oaths find the issues herein joined in favor of the plaintiff and assess as the amount of his recovery the sum of $20,166.67 in addition to the $4,556.22 which he has received from Lewis E. May."

The jury answered special questions as follows:

"Q. No. 1. Do you find that the plaintiff was negligent? A. No.

"Q. No. 2. (a) Was the plaintiff aware of the fast approaching car of Lewis E. May from the east? A. No. (b) If your answer is 'No', what prevented him from being apprised of the imminent danger? A. Back to East and in crouched position at front of Pennock car. (c) If your answer is 'Yes', what precautions, if any, did he take to safeguard himself? A. .............

"Q. No. 3. Was the collision the result of an accident as defined in the Court's instructions? A. No.

"Q. No. 4. State the position the defendant's car was in with reference to the north edge of the black top at the time the collision occurred? A. Rear wheels 1 ft. to 3 ft. out from north edge of black top—facing Southeasterly about 40-45 degrees.

"Q. No. 5. State what act or acts of negligence, if any, did defendant commit? A. Having his car improperly parked—(facing Southeast instead of West) on wrong side of road and extending past State allotted space for passing of other cars or vehicles, and improper signals or lights.

"Q. No. 6. Where was the left rear wheel of the tractor with reference to the north edge of the black top on the highway when it was struck by the May car? A. Around one foot South of North edge of black top.

"Q. No. 7. Was the tractor equipped with lights? A. No. 

"Q. No. 8. If your answer is 'no,' do you find that the failure to have lights on the tractor was a cause of or directly contributed to causing the collision. A. No.

"Q. No. 9. Did plaintiff have equal opportunity with the defendant to be aware of the fast approaching car from the east? A. No.

"Q. No. 10. Were the headlights on the Reed car lighted, were blinking and visible to May as he approached in his car from the east immediately prior to and at the time the collision occurred? A. No."

Defendant filed a motion for judgment on the answers to special questions notwithstanding the verdict and this was overruled, whereupon the defendant filed a motion for a new trial on the grounds of abuse of discretion; erroneous rulings and instructions of the court; that the verdict was given under the influence of passion and prejudice; that the verdict was in whole or in part contrary to the evidence; newly discovered evidence; that the verdict was pro-

cured by the corruption of the party obtaining it; that the court erred in sending verbal instructions to the jury and in submitting a special form of verdict; that it erred in telling the jury a diagram drawn by one of the defendant's counsel upon the floor was improper; in refusing to grant a continuance upon the grounds that the court allowed a material amendment to plaintiff's reply on December 13, 1949; and in refusing to pass upon the defendant's motion for judgment on the pleadings; and in overruling the defendant's demurrer to the evidence; in overruling defendant's motion for a directed verdict; in receiving evidence from the plaintiff over the objection of the defendant and admitting in evidence what purported to be a copy of a release without proper identification; that the verdict was excessive; misconduct of the jury; and of the prevailing party; accident and surprise which ordinary prudence could not have guarded against; and defendant was not afforded a reasonable opportunity to present his defense.

This motion was overruled and defendant has appealed.

We shall consider first the argument of defendant that his demurrer to plaintiff's evidence should have been sustained. Defendant argues here that the evidence of plaintiff proved him to have been guilty of such contributory negligence as to bar his right to recover as a matter of law. Defendant does not argue that the evidence does not show him to be guilty of negligence. He only argues it shows plaintiff was equally guilty of negligence.

The injury occurred at a point some sixty feet west of where a country road intersects state highway 160. Plaintiff's home is some distance south of this point. All parties agree a car, which we shall refer to as the Pennock car, was in the ditch headed west on the north side of highway 160 and that the highway was black top, about twenty-four feet wide, with a shoulder about two feet wide on each side.

It is also agreed that defendant's car was in a position so that its rear end was a few feet from the rear end of the car in the ditch. There is dispute about the exact position of defendant's car, but the plaintiff testified that when he reached the scene it was headed toward the southeast across the highway at an angle of about forty-five degrees; that when he arrived at the scene its lights were shining in a southeasterly direction; that it blocked the entire north half of the highway and part of the south half. This is sufficient to establish the position of the defendant's car for the purpose of ruling

on the demurrer to plaintiff's evidence and would put defendant's car in the line of traffic of a car approaching from the east. All are agreed that plaintiff was called from his home about 2:30 in the morning; told there was a car in the ditch; that he was requested to bring his tractor to pull it out and that he got out of bed and drove his tractor to the intersection. There is a sharp conflict in the evidence as to where he left his tractor or rather where it was when he was injured. Defendant pleaded in his answer and attempted to prove that plaintiff parked it on highway 160 facing west, a few feet east of defendant's car, and in the same traffic lane. Plaintiff testified, however, that he drove it to the corner and stopped and that no part of it went on the paved part of highway 160; and that it was headed in a southwesterly direction, just on the west edge of the gravel on the country road. A car being driven from the east on highway 160 collided with either the plaintiff's tractor first, and knocked it against defendant's car or collided with defendant's car without hitting the tractor. Defendant argues on his demurrer to the evidence that plaintiff's evidence showed his tractor to have been parked in the traveled portion of highway 160.

The evidence of plaintiff, to which reference has already been made as to where he left the tractor, was that it was entirely off the paved portion of the state highway. This was sufficient on that point to withstand a demurrer to plaintiff's evidence because if the tractor was entirely off the black top, plaintiff had done everything in his power to guard against it being hit by a car on the highway. Plaintiff testified that he dismounted from his tractor; walked west past the defendant's car and to the front of the Pennock car and was stooping down looking under it to see where he could fasten a chain when defendant's car was hit by a car coming from the east and he was injured. Defendant argues that plaintiff was aware of the dangerous situation but took no steps to correct it; that he admitted his tractor had at least one wheel on the highway and that his tractor had no lights except a flashlight, which he had left upon it; that by admitting he had his tractor repaired after the occurrence he left only the conclusion that the tractor was hit in the collision and this makes plaintiff guilty of contributory negligence as a matter of law.

We cannot agree. Whether under all the surrounding facts and circumstances the plaintiff acted with due regard for his own safety, where there is substantial evidence that he did so act, is not a matter

of law that can be reached on a demurrer to the evidence. In *Murphy v. Gas & Oil Co.*, 96 Kan. 321, 150 Pac. 581, we said:

"Whether or not the plaintiff exercised ordinary care, after having knowledge, would have been a question for the jury."

In *Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721, we said:

"In determining whether as a matter of law a plaintiff is guilty of contributory negligence which precludes his recovery for injuries sustained, all of the testimony favorable to the plaintiff must be accepted as true, and if the facts are such that reasonable minds reach different conclusions thereon, the question must be submitted to the jury and cannot be determined by the court as a matter of law."

(See, also, *Hukle v. Kimble*, 169 Kan. 438, 219 P. 2d 434; and *Samms v. Regier*, 167 Kan. 556, 207 P. 2d 414.)

In consideration of a demurrer to the evidence we will not only refuse to weigh the evidence but will draw all reasonable inference in favor of the plaintiff's cause of action. (See *Balthazor v. B. & B. Boiler & Supply Co.*, 169 Kan. 188, 217 P. 2d 906.)

Defendant states in his brief the plaintiff's evidence does not show defendant's parked car was the cause of the accident, but that it revealed the car coming from the east hit first plaintiff's tractor. The record does not bear that statement out. There was substantial evidence that plaintiff's tractor never was in the traveled portion of highway 160 so that it could be hit.

The demurrer to plaintiff's evidence was properly overruled.

Defendent next argues the trial court erred in overruling his motion for a directed verdict. His argument on this is in a large measure a repetition of his argument on the question of whether or not defendant's demurrer to the evidence should have been sustained. It is not good.

Defendant next argues that the trial court erred in overruling his motion for judgment on the pleadings in considering plaintiff's amended reply and in refusing to grant a continuance after so doing.

The cause was set for trial on December 6, 1949, but by agreement of counsel was continued to December 14, 1949. Plaintiff's original reply had been filed on November 19, 1949. On December 10, 1949, defendant filed a motion for judgment on the pleadings. The basis of that motion was that when defendant had alleged in his answer that plaintiff was guilty of contributory negligence the plaintiff in his reply had only denied the allegations of the defendant's answer, which were inconsistent with and were contrary to the allega-

tions of the petition. The defendant argued that such a denial was not sufficient to put in issue the question of whether or not the plaintiff was guilty of contributory negligence. On December 13, 1949, the day before the case was to go to trial, the court gave plaintiff leave to file an amended reply, which denied all new matter in the answer. This was a matter entirely within the discretion of the trial court. Conceding for the moment, but not holding, that the first reply was insufficient to put the matter of contributory negligence in issue, still the defendant was not prejudiced in his defense by the court permitting the amendment.

About the same may be said about the defendant's argument that the trial court erred in refusing to grant the defendant a continuance at that point. It is true the case was set for trial the next day. However, the original reply had been filed since November 19, 1949. That was nearly thirty days and the defendant did not see fit to file the motion for judgment, thus calling the attention of the court and the parties to the reply until two or three days before the case was set for trial and after it had been continued for a week by agreement of counsel. The entire matter was one in which the court had authority to exercise wide discretion. (See *Barton v. Hackney*, this day decided; also *Byington v. Comm'rs of Saline Co.*, 37 Kan. 654, 16 Pac. 105, also G. S. 1935, 60-759.)

Defendant next argues the court erred in giving instructions to the jury. In this connection he first argues the trial court erred in giving instruction 9. This instruction was as follows:

"You are instructed that under the law of Kansas it is the duty of the operator of a motor vehicle when stopping or parking said vehicle on a highway outside the city limits of an incorporated city to stop or park said vehicle parallel with such highway and near the right-hand side of said highway; that in parking a motor vehicle on the public highway during the night-time it should be parked in such a manner that 20 feet of the pavement or travel portion of said highway is left open for the passage of other vehicles."

We do not find where defendent objected to this particular instruction. It is true that during a colloquy between the trial court and counsel, counsel stated he wished the record to show the defendant objected to the instructions beginning with No. 9 to the end. Nowhere do we find any specific objection to No. 9. The general objection was not sufficient. (See *Stith v. Fullinwider*, 40 Kan. 73, 19 Pac. 314; also *Ryan v. Madden*, 46 Kan. 245, 26 Pac. 679.) Furthermore, when we construe all the instructions together

in the light of the entire record we see nothing wrong with instruction 9.

Defendant next argues that the trial court erred in giving instruction 15. That instruction was as follows:

"In this connection you are instructed that in order to make negligence the direct and proximate cause of an injury there must have been some causal connection between the negligent act and the injury; that is to say, the negligent act must have been such an act that without it the injury would not have occurred, or in other words, the negligent act must have been the cause which produced the injury, and if the negligent act did not cause or produce the injury, then it is not the proximate cause thereof. However if an intervening act was foreseen or might reasonably have been foreseen by the defendant his negligence may be considered the proximate or legal cause of the injury, notwithstanding the intervening act, if you find any existed."

Defendant objects to the last sentence of this instruction. He argues this sentence presupposes negligence on his part. This instruction must be construed along with all the other instructions. (See *C. B. U. P. Rld. Co. v. Andrews,* 41 Kan. 370, 21 Pac. 276; also *Giltner v. Stephens,* 166 Kan. 172, 200 P. 2d 290.) When so construed we discern nothing wrong with instruction 15.

Defendant points out other instructions he argues the trial court should not have given, but we have examined them and find the above applies with equal force to them. The trial court did not err in instructing the jury.

Defendant next argues that the trial court erred in the form of verdict he submitted to the jury. The driver of the car from the east, which was alleged to have struck defendant's car and knocked it against plaintiff, paid the plaintiff damages in the amount of $4,556.22.

One of the forms of verdict submitted to the jury and used by the jury in returning its verdict was as follows:

"We, the Jurors impaneled and sworn in the above entitled case, do on our oaths, find *the issues herein joined in favor of the plaintiff and assess as the amount of his recovery the sum of $_____ in addition to the $4556.22 which he has received from Lewis E. May.*"

Defendant argues the above form of verdict was in effect an improper instruction to the jury. We are unable to follow defendant's reasoning in this argument. We do not, however, approve that form of verdict. It would have been better had the court submitted a simple form by which the jury could have found either for the plaintiff or the defendant and named the amount of recovery,

if any. However, we think this form was more likely to have been prejudicial to the plaintiff than to the defendant. Submitting it under all the surrounding facts and circumstances was not a reversible error.

Defendant next argues that the trial court erred in admitting plaintiff's exhibit 6 in evidence. This was a copy of an instrument which purported to be a release of one Louis May from liability to the plaintiff. May was the driver of the car that came from the east. On this point defendant argues first that its admission violated the best evidence rule. He bases this argument on the fact that plaintiff did not show the original instrument was lost or destroyed or otherwise unavailable. Plaintiff testified as to the amount he received from an insurance company; that this amount was delivered to him by one Letton; that he signed an instrument and delivered it to Letton and since that time had not had access to it. Letton testified he settled with plaintiff on behalf of May and took a written instrument signed by plaintiff; that the original instrument was filled out by a man from his office in longhand at plaintiff's kitchen table; that the original document was brought to his office and an exhibit was made for his office files by his stenographer; and the original was sent to the insurance company. He did not have it. He testified after seeing exhibit 6 that it was an exact copy of the original release signed by plaintiff. The objection that this copy was not admissible in evidence under the circumstances detailed is not good. In *Deitz v. Regnier*, 27 Kan. 94, we said:

"The books of the banking house of Schuster, Hax & Co. were in the state of Missouri, out of the jurisdiction of the court. Their production could not be compelled in the courts of this state; and as the books were not in the custody of the party offering the account in evidence, but in the hands of a firm in another state, not subject to the call or control of the party needing them here, a copy thereof was admissible."

To the same effect is *Cooley v. Gilliam*, 80 Kan. 278, 102 Pac. 1091. (See, also, *White v. White*, 76 Kan. 82, 90 Pac. 1087.) The defendant also argues that the matter contained in the exhibit was incompetent because it had no bearing upon the question of the negligence of defendant Reed. The trouble with that argument from the viewpoint of defendant is that defendant injected the question of the release into the case at bar when he pleaded that the release was in full accord and satisfaction for these damages. It was necessary for the plaintiff to introduce that release to show that in it he reserved his right to sue the defendant.

This brings us to a consideration of defendant's argument that there was misconduct of the jury in that it rendered a quotient verdict. On the hearing of the motion for a new trial two of the jurors testified that after some discussion it was agreed that each juror should write the sum to which he thought the plaintiff was entitled on a slip and these amounts should be added together and divided by twelve and the quotient obtained would be the verdict; that this was done. The jurors testified that after reaching this quotient one of the jurors remarked that perhaps the verdict should be reduced to round figures.

The foreman of the jury testified that when that suggestion was made he said "No, as foreman of the jury the verdict is already rendered and that is what it shall be." He also testified that after the quotient was reached he asked the jurors to hold up their hands if that should be the amount of the verdict and each juror held up his hand.

It has long been a rule in this state that arriving at the amount of the verdict by reaching a quotient, such as was done in this case, was misconduct which would warrant the granting of a new trial.

In *Ottawa v. Gilliland*, 63 Kan. 165, 65 Pac. 252, we said:

"Where a jury agree that each member shall submit a sum which he thinks one of the parties ought to receive, that the sum of these shall be divided by the number of jurors, the quotient to be their verdict, and this is done and a nominal sum added for the purpose of making the amount an even number, without further deliberation or consideration, the verdict should be set aside."

To the same effect is *Anderson v. Kirby*, 105 Kan. 596, 185 Pac. 894; also *Neiswender v. Shawnee County Comm'rs*, 153 Kan. 634, 113 P. 2d 115. There is really no dispute in this record but that the conduct of the jury in reaching a verdict in this case was that detailed by the evidence of the two jurors and the foreman. Such was misconduct of the jury. It follows there must be a new trial in this action.

The judgment of the trial court is reversed with directions to grant defendant a new trial in accordance with the views expressed in this opinion.