No. 41,640

George C. Blevins, *Appellee*, v. Al Weingart Truck & Tractor Service, Inc., *Appellant*.

(349 P. 2d 896)

Opinion filed March 5, 1960.

*George Barrett*, of Pratt, argued the cause, and *Richard Barrett*, of Pratt, was with him on the briefs for the appellant.

*William Porter*, of Wichita, argued the cause, and *Getto McDonald, William Tinker, Arthur W. Skaer, Hugh P. Quinn, Alvin D. Herrington, Darrell D. Kellogg* and *Richard T. Foster*, all of Wichita, and *Max C. Bucklin* and *John D. Megaffin*, both of Pratt, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action for damages resulting from a collision between an automobile and a truck at the intersection of MacArthur Road and Viola Road in Sedgwick County, Kansas. From a judgment in favor of the plaintiff, the defendant appeals, specifying various trial errors.

The plaintiff (appellee), George C. Blevins, was injured and his automobile damaged in a collision which occurred on the 19th day of November, 1957, at about 7:30 in the morning. The driver of a truck owned by the defendant (appellant), Al Weingart Truck & Tractor Service, Inc., was proceeding south on Viola Road which intersected MacArthur Road. Stop signs were at the intersection facing traffic on Viola Road. The plaintiff was traveling fifty-five miles per hour, the speed limit, when the defendant's truck proceeded into the intersection at a time when plaintiff was so close that he could not stop before getting to the point where the truck was crossing. Confronted by the defendant's truck, forty-five feet in length loaded with oil field pipe on a pole trailer crossing a twenty-foot highway, the plaintiff, fearing his automobile would run under the pipe, turned his vehicle in an effort to strike the rear wheels and tires of the pipe truck, thus making the point of collision approximately six feet south of the highway upon which the plaintiff was proceeding. The defendant's driver did not see the plaintiff and did not know a collision had occurred until he "felt a jolt" and looked back through the rear view mirror.

The plaintiff went to Dr. Morgan on the day of the collision with pain in his head and chest. At that time he did not complain of pain in his back. The diagnosis was (a) mild cerebral concussion; (b) laceration of scalp and (c) contusion, anterior left chest. Dr. Morgan saw the plaintiff again on the 21st day of November, 1957, at which time he complained of pain in the anterior left chest. Dr. Morgan gave him a corset-like device which he wore at night and while at work.

The plaintiff testified he lost two days of work and then returned to his employment as a clerk for the Cessna Aircraft Company. His chest stopped hurting approximately ten days after the accident and he began noticing pain in his back. When his back ached he could not straighten up or lift, and it was almost impossible for him to walk, according to his testimony. His wife would rub liniment or alcohol on his back and put a hot pad on it. This particular attack lasted about five days. He testified that approximately a month after the first back pain he sneezed and jerked his back again and the same thing repeated. The pain would run from his back down to his groin and into parts of his legs. He testified this attack lasted approximately four or five days. At no time, however, other than

the day of the accident and the day following did he lose any work at the Cessna plant.

In May, 1958, the plaintiff went to the office of Dr. Hervey R. Hodson to be examined so that Dr. Hodson could testify in the case, and on the 21st day of February, 1959, he again visited Dr. Hodson for the same purpose. At no time after the accident was the plaintiff treated by any doctor for his ailments. The first complaint the plaintiff made to any doctor concerning his back was made to Dr. Hodson on the second examination in February, 1959.

An X ray view of the dorsal spine revealed no evidence of fracture but it did reveal healing fractures of the sixth and seventh ribs in the left mid axillary line. At the trial Dr. Hodson described the plaintiff's back as a poor mechanical back which could not stand quite the usual stress and strain that the average back would. At the time of Dr. Hodson's first examination he estimated the plaintiff had a fifteen to twenty per cent temporary partial impairment. On the second examination Dr. Hodson thought the plaintiff was still disabled to the extent of fifteen to twenty per cent. He further testified:

". . . One would expect this man to improve some and I think that he should have some further treatment. I might add, if I may, that this type of a back that we see this man exhibit is one of these conditions in which a poor mechanical back following injury keeps repeating itself. I mean every little trauma adds to the situation and that is what we have here. I couldn't say that it would not result in any permanent disability. . . ."

When Dr. Hodson last saw the plaintiff his chest condition had apparently cleared up.

The defendant did not choose to have any physical examination of the plaintiff or to offer any medical testimony.

The plaintiff's petition alleged that prior to the collision he was twenty-nine years of age, and upon appropriate allegations broad enough to cover the injuries concerning which he testified, he requested judgment against the defendant in the sum of $50,000.

The jury returned a verdict in the sum of $8,300 and found in answer to a special question that the plaintiff was not guilty of contributory negligence.

The trial court after argument on the motion for a new trial reviewed the evidence presented at the trial in considerable detail and concluded that if "the plaintiff desires to remit $3,000.00 of that verdict, and so file a remittor within ten days from this date,

I'll overrule the motion for new trial, otherwise the new trial will be granted."

The plaintiff duly filed his remittitur and the court then approved the verdict and entered judgment in favor of the plaintiff in the sum of $5,300 and costs. Appeal was duly perfected by the defendant from the judgment and all adverse rulings including the overruling of the defendant's motion for a new trial.

The appellant contends the verdict was not supported by the evidence, and argues primarily the inconsistencies in the evidence, including alleged inconsistencies in the plaintiff's evidence. The appellant suggests the jury should not have believed the plaintiff. Taken altogether, it is clear there was substantial competent evidence presented in the record from which the jury could have found that the collision occurred, that it was caused by the negligence of the defendant's driver, that the plaintiff's automobile was damaged, and that the plaintiff received physical injuries which have caused his pain and discomfort. The appellant did not choose to ask the trial court to submit special questions concerning how much, if any, of the verdict was intended as compensation for pain and suffering, and the like. The law is clear this court does not, in such circumstances, test the credibility of the witnesses, weigh the evidence and assume the position of the trier of the facts. (*Smith v. Wichita Transportation Corp.,* 179 Kan. 8, 13, 293 P. 2d 242; *Collins v. Wichita Transportation Corp.,* 177 Kan. 677, 281 P. 2d 1102; and *Townsend, Administrator v. Jones,* 183 Kan. 543, 331 P. 2d 890.)

The appellant complains there is no evidence that the injuries received by the appellee will definitely be permanent in nature. Apparently the premise is that unless one can prove he has been permanently disabled, he is not entitled to any damages. In the present case the appellee was a twenty-nine year old wage earner and the sole support of his wife and children. He unquestionably received painful injuries in the collision. His injuries had bothered him for some sixteen months up to the time of the trial. Shortly before the time of trial his doctor found that he was still disabled and although the doctor stated that he expected the plaintiff should improve some, he could not state that some permanent disability would not result. Whether, upon all the evidence presented, the back injuries were the result of the collision was a question to be determined by the jury. This court cannot now apportion any part of the general verdict to unproved permanent disability without assuming the position of the trier of the facts, which it will not do.

The appellant contends the verdict was excessive and given under the influence of passion and prejudice. It is also urged that the trial court was dissatisfied with the verdict and abused its discretion in failing to set the verdict aside.

After hearing the argument on the motion for a new trial, the trial court, prior to granting the plaintiff an opportunity to remit $3,000, recognized that $300 awarded by the jury represented damages to the appellee's automobile which was consistent with the evidence, and said:

"The only question I have in my mind is as to whether or not I am justified in modifying this verdict. I can't make myself believe that anything like $8,000.00 was proved in this case for personal injury. I have gone over the plaintiff's testimony to considerable extent and I have gone over the medical testimony to quite a considerable extent and there just isn't evidence here that would warrant an $8000.00 verdict for personal injuries in my opinion. . . ."

The trial court then discussed the medical evidence in some detail. It is obvious the trial court thought the general verdict for the appellee was justified, also that the $300 damages to the automobile were proper, and it is obvious the trial court felt the appellee should recover something for his personal injuries. The sole question was whether $8,000 for personal injuries was excessive. The trial court deemed $8,000 for personal injuries excessive and appellee remitted $3,000 rather than submit to a new trial. Our question is whether the verdict, after remittitur and as approved by the trial court, is excessive. Upon the record presented we cannot say it is excessive. At no time does the trial court intimate there was any passion or prejudice involved on the part of the jury, or that the damages awarded were so excessive as to permeate the entire verdict.

It has been held where the trial court gives the plaintiff an option to remit, or in the alternative to submit to a new trial, it necessarily found that there was neither passion nor prejudice in connection with the verdict. It merely disagreed with the jury respecting the amount which would compensate for the plaintiff's injuries. (*Hockman v. Candy Co.,* 104 Kan. 94, 178 Pac. 254; *Emerick v. Motor Car Co.,* 104 Kan. 136, 178 Pac. 399; and *Davidson v. Douglass,* 129 Kan. 766, 284 Pac. 427.) In the *Emerick* case it was said:

". . . We must start with the assumption that the trial court, placed in a position far more favorable than is this court for discovering whether or not the original verdict was tainted with prejudice and passion, determined that question against the defendants' contention, holding, however, that the

amount of the judgment was excessive. In such a situation, it becomes the first duty of the trial court to determine whether the excessive verdict has been rendered as a result of prejudice and passion which deprived the defeated party of a fair trial; and where the court has reason to believe this to be the case, the taint cannot be removed, nor the error cured, by merely reducing the verdict to an amount which the court thinks would compensate the injured party, if he is entitled to recover.

". . . we are confronted with the fact that the trial court saw and heard the witnesses and must have been convinced that the error of the jury in fixing an excessive amount of damages did not permeate the entire verdict. . . ." (pp. 140, 141.)

It has also been held in an action for damages for personal injuries, where there was a judgment for the plaintiff and nothing in the record to indicate passion or prejudice other than the amount of the verdict, this court will not require the plaintiff to accept a remittitur or grant a new trial, unless, under the facts disclosed by the record, the judgment is so large that it cannot in reason be allowed to stand. Thus, if a jury returns a verdict in excess of that which the trial court or this court deems proper under the evidence, and without any other indication of passion or prejudice on the part of the jury, the fact that the verdict is larger than the court can sustain does not require a new trial if the plaintiff is willing to consent to a proper remittitur. (*Green v. Fleming,* 126 Kan. 560, 268 Pac. 825.)

The trial court, in a much better position to judge the matter than this court, thought the verdict excessive and required the remittitur, but the fact the court approved the verdict for $5,300 demonstrates that it did not regard the amount of the original verdict as having resulted from passion and prejudice on the part of the jury (if he had so regarded it he should have granted a new trial), but rather discloses that it was the judgment of the court that the verdict was excessive in view of the evidence of injury. This is in effect the opposite of a finding by the trial court that the jury was influenced in the amount of its verdict by passion and prejudice. Since there is nothing else to disclose passion and prejudice on the part of the jury, we see no reason to grant a new trial on this ground. (*Davidson v. Douglass,* supra.)

Did the court err in finding that the jury did not enter a quotient verdict?

Where a verdict is determined by the jurors agreeing in advance that each should set down the amount of damages to which he thinks the party is entitled, these several amounts to be added together and the sum divided by the number of jurors, and to return

a verdict for the quotient so found, it is misconduct of the jury which warrants the granting of a new trial. (*Ottawa v. Gilliland,* 63 Kan. 165, 65 Pac. 252; *Neiswender v. Shawnee County Comm'rs,* 153 Kan. 634, 113 P. 2d 115; *Flaharty v. Reed,* 170 Kan. 215, 225 P. 2d 98; and *Hukle v. Kimble,* 172 Kan. 630, 243 P. 2d 225.)

The impropriety of a "quotient" verdict, and the situation which the law abhors, consists not in the method or the result but in the *advance agreement* of the jurors to be bound by the quotient so determined, and then return the quotient as a verdict without further suitable deliberation. Quotient verdicts are frequently denominated "gambling" verdicts. This is because at the time the advance agreement is made no juror can possibly know the ultimate figure to which he thereby commits himself. Not only does such prior agreement bind the juror to accept whatever the ultimate quotient may prove to be, regardless of whether or not it then appears fair and reasonable, but it vests in each individual juror power to make the amount of the verdict unreasonably great or small, as he may desire. This is why they are objectionable. (See, *Foster v. City of Augusta,* 174 Kan. 324, 256 P. 2d 121; 39 Am. Jur., New Trial, § 124, p. 134; and 66 C. J. S., New Trial, § 59, pp. 186, 188.) If, however, there is no antecedent agreement between the jurors, or commitment to be bound by the quotient so found, resort to the averaging process is entirely permissible. The jurors are as much entitled to strike a quotient to see what their average thinking is, to serve as a working basis, as they are to let each juror give his suggested verdict orally and permit some member of the jury to strike a rough quotient by mental arithmetic. So long as there is opportunity for full discussion and deliberation concerning the question of damages, and so long as each juror gives his own independent agreement to the sum arrived at, after he knows what the sum is, there is no misconduct and no ground for a new trial. And this rule applies even though the verdict returned was exactly or nearly the amount of the quotient. (*Hamilton v. Railway Co.,* 95 Kan. 353, 148 Pac. 648; *Schaake v. Railway Co.,* 102 Kan. 470, 170 Pac. 804; *Newell v. City Ice Co.,* 140 Kan. 110, 34 P. 2d 558; 53 Am. Jur., Trial, § 1030, pp. 710, 711; and 66 C. J. S., New Trial, § 59, pp. 186, 188; see, also, *Foster v. City of Augusta,* supra.)

At the hearing on the motion for a new trial three jurors were called to testify concerning the manner in which they arrived at the verdict. Their testimony was not consistent, and it was such that

the trial court in weighing their testimony could have found the verdict was or was not a quotient verdict.

The testimony of each of the jurors most favorable to the trial court's finding that the verdict was not a quotient verdict follows. The first juror testified there was "a complete understanding and general agreement that the amount set down on these papers, being added together and divided by 12, would be the amount awarded, *unless some juror actually objected.*" (Emphasis added.) It was not clear from the testimony of the second juror how many quotients were struck. She was somewhat confused but it appears from her testimony that some of the votes were not satisfactory with everyone and additional votes were taken. She said: "We voted twice and it was too much the first time to suit some and we decided to vote again and we could have voted all night and not got the same figures." The testimony of the third juror indicated "There was quite a bit of difference between us all so we talked again. At that time some of them thought it wasn't just quite right so then we talked some more about it and took another vote." He said: "Everyone agreed upon $8,300.00 before coming back into the court room."

The first juror testified that finally they struck an average of $8,400. Of this, it was determined as a result of further discussion, $300 was the damage to the automobile which left $8,100 for the injuries. After further deliberation they changed the allowance for personal injuries to $8,000. The time consumed in their deliberations after striking the average figure of $8,400 was approximately fifteen minutes before they reached a verdict.

The finding of the trial court that the verdict of the jury was not a quotient verdict, is supported by sufficient testimony of the jurors, giving it all favorable inferences to which it is entitled in support of such finding. Under these circumstances, where the testimony is conflicting, we are not warranted in disturbing such finding of the trial court. It was reasonable to find upon all the evidence that the average struck by the jury served as a working basis upon which to conduct further deliberations, and that the jurors did not agree in advance *to be bound* by the quotient.

Upon a careful review of the record presented to this court on appeal, it does not affirmatively appear that the appellant has established error or that the appellant has been denied a fair trial.

The judgment of the lower court is affirmed.