No. 72,709

ALLAN JONES, *Appellee,* v. JOHN SIGG d/b/a JOHN'S USED CARS, *Appellant.*

930 P.2d 1077

Opinion filed January 31, 1997.

*Marc A. Powell,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Jeffrey R. Emerson* and *Donald N. Peterson II*, of the same firm, were with him on the briefs for appellant.

*David S. Wooding*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, argued the cause, and *Richard K. Thompson*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

LARSON, J.: This is a motor vehicle personal injury case wherein a jury found that Allen Jones sustained a neck injury entitling him to damages of $352,957. John Sigg appealed the trial court's denial of a motion for a new trial, contending the jury award to Jones for one-half of his claimed damages in several categories where damages were awarded was a quotient or a compromise verdict. The Court of Appeals, in an unpublished opinion, decided the jury had rendered a quotient verdict and reversed and remanded for a new trial on the question of damages only. We granted Jones' petition for review, in which he argued the Court of Appeals had applied an incorrect standard of review and erred in finding the verdict was an improper quotient verdict.

Highly controverted facts relating to damages are involved in this case, which will be briefly summarized. However, the essential

issues we are required to examine involve only the alleged misconduct of the jury.

Jones' vehicle was rear-ended while he was driving on a Butler County highway in May 1991. Jones was driving a pickup truck pulling a boat and was lawfully stopped due to traffic ahead. Behind Jones were two pickup trucks, both driven by employees of John Sigg. The first pickup stopped successfully, but was hit by the pickup following it, which pushed it into the back of Jones' boat.

The driver of the truck initiating the collision pled guilty to a citation for following too closely. The accident was reported as noninjury, with property damage estimated at less than $1,500 per vehicle. Jones told the police he was not injured. The other drivers received no injuries.

Jones did not see a doctor immediately after the accident, but scheduled an appointment for the next day with his chiropractor, Dr. Wilbeck. Jones had received previous treatment from Dr. Wilbeck for neck and shoulder pain stemming from other injuries. After diagnosing Jones with a muscle sprain, Dr. Wilbeck began treating him with adjustments and manipulations. Jones received chiropractic care periodically throughout the following summer and fall, but continued to work at his construction business. Jones missed a total of 3 days work, but incurred $6,048.50 in medical expenses from his treatments with Dr. Wilbeck.

In November of 1991, Jones suffered a sneezing attack which greatly increased his pain. An MRI revealed a herniated disc. Expert testimony conflicted as to whether the accident caused this injury. In February 1992, Jones decided to undergo a series of two laser surgeries to help cure his neck problems.

Between the first and second surgeries, Jones suffered another sneezing attack, reinjuring the part of his neck that had already been operated on and necessitating a third surgery. Jones required a fourth surgery following another automobile accident in July 1992. Jones sought no damages for this last surgery, which supposedly returned him to his condition prior to the second accident. Jones was later involved in another accident. Additionally, in March 1993, Jones was hospitalized for severe depression, but the causes relating thereto were excluded from evidence.

Jones' suit against Sigg sought damages for medical expenses of $68,686, lost wages of $79,440, lost future earnings of $443,221, past household services of $14,563, future household services of $155,636, and pain and suffering of $100,000.

In addition to denying liability, Sigg contested the extent and cause of Jones' damages. Sigg's experts disputed the necessity of Jones' operations and questioned the manner in which they were performed. Sigg challenged Jones' inability to work and his earning potential. Sigg also asserted that other factors, such as prior injuries, subsequent accidents, and depression, all contributed to Jones' damages.

The jury returned a verdict finding Sigg 100% at fault and awarded one-half of the damages claimed for six of the seven damage categories, but none for future household services. Eleven of the 12 jurors agreed on this verdict.

Sigg moved for judgment notwithstanding the verdict, a remittitur, a new trial on damages, and, in the alternative, to recall the jury. After a hearing, the trial court denied all of Sigg's post-trial motions. It held the verdict was not contrary to the evidence, it was supported by substantial competent evidence, and the jury had not engaged in misconduct or rendered a quotient verdict.

Sigg moved to alter the judgment after obtaining an affidavit from juror Georgiana Fullinwider which claimed that the jurors made an agreement to divide Jones' claimed damages by two. The affidavit in critical part reads:

"2. During the deliberations, the jury members were basically split into two groups. One group did not want to award substantial damages and the other half of the jury did want to award substantial damages.

"3. After several attempts to arrive at a verdict on damages, we entered into an agreement to use a mathematical calculation to conclude the deliberations. Since there were two groups of jurors, we agreed to divide the plaintiff's claim by two and award 50 percent of each of his claims, except for one item where nothing was awarded. All of the items of damages that were awarded are exactly 50 percent of the claim for that item.

"4. Before applying the 50 percent figure to the items claimed, we entered into a prior agreement to be bound by the results of the mathematical calculation."

Jones filed a motion in opposition with an affidavit from the jury foreman, Joe Stubblefield. The portion of Stubblefield's affidavit relevant to this appeal provided:

"4. The jury's verdict awarding plaintiff the amounts described in the preceding paragraph was the result of negotiation and deliberation among the jurors. Some jurors believed plaintiff was entitled to more than that which was awarded, while other jurors believed plaintiff was entitled to less than that which was awarded. The jury discussed the underlying testimony and evidence relating to plaintiff's damages with each juror stating the reasons supporting his or her position. After these deliberations, and as a result of the discussion among the jurors, the jury reached its verdict. However, one juror did not agree with the verdict ultimately reached by the rest of the jurors. This juror believed that plaintiff should receive substantially less than that which was awarded and that juror represented the lone dissenting vote from the jury's verdict.

"5. There was no agreement in advance among the jurors to return as their verdict an amount obtained by averaging the figures each individual juror recorded as his or her verdict, nor did averaging of any type occur. The verdict was a result of compromise and negotiation between the jurors."

The court denied the motion for a new trial, stating: "In the mind of the Court, it looks like—to me it is not a quotient verdict in the—to the extent as mentioned in *Blevins*. It seems to me that they couldn't agree and they decided to split the difference, and to me that's—I don't think that's a quotient verdict."

Sigg appealed, raising four issues. The Court of Appeals reversed and remanded for a new trial on the issue of damages only. Based on *Giblin v. Giblin*, 253 Kan. 240, 253-54, 854 P.2d 816 (1993), the Court of Appeals determined it could examine the affidavits de novo to establish the facts regarding the propriety of the verdict. The court decided Stubblefield's affidavit was not credible because it stated no averaging of any type had occurred when it was "highly unlikely that the jurors could have awarded the damage amounts without averaging in some form." Based on the Fullinwider affidavit, the Court of Appeals held the jury circumvented the deliberation process and rendered a quotient verdict.

The Court of Appeals did not address the question of whether this was a compromise verdict, but ruled against Sigg as to the other issues he raised on appeal.

Jones' petition for review, asserting that the jury award was not a quotient verdict and the Court of Appeals applied an incorrect standard of review was granted. Sigg did not request review of any other issues. We reverse the Court of Appeals and affirm the trial court.

*Was the jury award an improper quotient verdict?*

The Court of Appeals relied on *Giblin* to hold that because the parties did not present oral testimony, but relied on written affidavits of jurors, the appellate court could examine the affidavits and determine de novo what the facts established.

Jones contends in his supplemental brief that the proper standard of review of the refusal of the trial court to grant a new trial is whether the trial court abused its discretion, citing *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 476-79, 856 P.2d 906 (1993); and *Sterba v. Jay*, 249 Kan. 270, 274, 816 P.2d 379 (1991).

Sigg claims the Court of Appeals correctly relied on *Giblin* to make a factual determination and then properly concluded that because 11 jurors entered into an agreement to use a mathematical average to award damages by reducing six different claims by half, this amounted to a quotient verdict, which was clear misconduct. Sigg relies on our statement from *Saucedo v. Winger*, 252 Kan. 718, 730, 850 P.2d 908 (1993), that "[a] decision which is contrary to the evidence or the law is sometimes referred to as an abuse of discretion, but it is nothing more than an erroneous decision, or a judgment rendered in violation of law."

This court has previously held in *Foster v. City of Augusta*, 174 Kan. 324, 331, 256 P.2d 121 (1953):

> "It is a rule of this court that whether a verdict was or was not a quotient verdict is a question of fact for the trial court to determine (*Fitch v. State Highway Comm.*, 137 Kan. 584, 587, 21 P.2d 318; *Claggett v. Phillips Petroleum Co.*, supra 201, 202), and the judgment having been entered and approved by the trial court in the instant case, this court will not disturb the judgment on that account."

In this case, in addition to the two affidavits considered by the trial court, the record in the case clearly shows the amounts of the jury's verdict in the six categories where damages were awarded were either exactly one-half or extremely close to one-half of the amounts claimed by Jones in instruction No. 9a.

Since the trial court did not hear oral testimony from any juror, our rules allow us to determine de novo what the facts establish. *Giblin*, however, further notes: "Abuse of discretion and a de novo

determination of what the facts establish are not necessarily mutually exclusive." 253 Kan. at 254.

We do not agree with the Court of Appeals' finding that the Stubblefield affidavit submitted by Jones was not credible because it stated that no type of averaging occurred. In the strictest sense, the affidavit is precisely correct. It should be remembered that affidavits in cases such as this are seldom in the unprompted wording of the parties, but rather the products of our adversarial system. We will not disregard the wording of either affidavit, but rather will harmonize them to find what we believe actually happened.

The affidavits show the jurors were split into two groups and during their negotiations agreed to reduce Jones' claims in half as to six of the areas of claimed damages and allow no damages for the seventh. This result of the jury's deliberation is clearly shown from an examination of jury instruction No. 9a setting forth the specific amounts of the plaintiff's claimed damages and the damages assessed in (3) (a), (b), (c), (d), and (e) of the jury verdict.

Sigg alleges that because the jury divided the amount Jones requested by two in some of the claimed areas, the verdict is therefore a quotient verdict. This contention is simply erroneous.

A "quotient verdict" is a well-known legal term with a known specific definition. Its meaning is not established by utilizing a dictionary definition of "quotient," which is "[t]he quantity resulting from division of one quantity by another." Webster's II New Riverside University Dictionary 967 (1988).

Our leading legal dictionary defines a "quotient verdict" as a "verdict resulting from agreement whereby each juror writes down [the] amount of damages to which he thinks [a] party is entitled and such amounts are then added together and divided by [the] number of jurors." Black's Law Dictionary 1256 (6th ed. 1990). Kansas has always added the requirement that the jury agrees in advance to be bound by this result. *Johnson v. Haupt*, 5 Kan. App. 2d 682, 686, 623 P.2d 537 (1981).

The definition of "quotient verdict" has been stated in numerous cases of the Kansas appellate courts:

" 'A quotient verdict is one in which the jurors agree in advance to return as their verdict the amount obtained by averaging the figures each juror records as his

verdict and subsequently return a verdict that is the direct product of such an agreement.' [Citations omitted.]" *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. at 477-78.

Perhaps our most extensive discussion of this question is found in *Blevins v. Weingart Truck & Tractor Service*, 186 Kan. 258, 263-64, 349 P.2d 896 (1960), where Justice Schroeder stated:

"Where a verdict is determined by the jurors agreeing in advance that each should set down the amount of damages to which he thinks the party is entitled, these several amounts to be added together and the sum divided by the number of jurors, and to return a verdict for the quotient so found, it is misconduct of the jury which warrants the granting of a new trial. [Citations omitted.]

"The impropriety of a 'quotient' verdict, and the situation which the law abhors, consists not in the method or the result but in the *advance agreement* of the jurors to be bound by the quotient so determined, and then return the quotient as a verdict without further suitable deliberation. Quotient verdicts are frequently denominated 'gambling' verdicts. This is because at the time the advance agreement is made no juror can possibly know the ultimate figure to which he thereby commits himself. Not only does such prior agreement bind the juror to accept whatever the ultimate quotient may prove to be, regardless of whether or not it then appears fair and reasonable, but it vests in each individual juror power to make the amount of the verdict unreasonably great or small, as he may desire. This is why they are objectionable. [Citations omitted.] If, however, there is no antecedent agreement between the jurors, or commitment to be bound by the quotient so found, resort to the averaging process is entirely permissible. The jurors are as much entitled to strike a quotient to see what their average thinking is, to serve as a working basis, as they are to let each juror give his suggested verdict orally and permit some member of the jury to strike a rough quotient by mental arithmetic. So long as there is opportunity for full discussion and deliberation concerning the question of damages, and so long as each juror gives his own independent agreement to the sum arrived at, after he knows what the sum is, there is no misconduct and no ground for a new trial. And this rule applies even though the verdict returned was exactly or nearly the amount of the quotient. [Citations omitted.]"

Our decisions have consistently held that a quotient verdict only exists when the jurors have agreed in advance to return as their verdict the amount obtained by averaging the figures each juror records as his or her verdict and to thereafter refuse to reexamine, discuss, or deliberate the amounts of damage or the percent of liability. However, on numerous occasions we have questioned whether the method utilized in computing the damages results in

a quotient verdict. For example, in *Hogue v. Kansas Power & Light Co.*, 212 Kan. 339, 345, 510 P.2d 1308 (1973), we stated:

"It is argued that this procedure resulted in a quotient verdict. We cannot agree with this argument. A quotient verdict results from adding the suggested verdict of each juror and then dividing the total by the number of jurors, it having been agreed by the jurors beforehand that all would be bound by the result. The average computed in the present case was an average of the before-value estimates of expert witnesses, not an average of the verdicts suggested by individual jurors.

. . . .

". . . While the method of computing the damages may have been somewhat unorthodox, we cannot say the jury acted unlawfully or that it was guilty of misconduct."

Additionally, in *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. at 478-79, we refused to address the merits of a contention that a quotient verdict had been rendered, finding that the juror's affidavit probed into the mental processes of the jury and could not be used to overthrow the verdict. A juror in *Cott* had alleged that the jury started with the maximum allowable damages and reduced the amount until the requisite 10 jurors agreed on a total, which was then allocated into three damage categories.

Justice Abbott, writing for a unanimous court, stated:

"Again, we need not address the merits of Peppermint Twist's contention. Buford's affidavit probes into the mental processes of the jury and may not be used to overthrow the verdict. See *Merando*, 232 Kan. at 410 (trial court properly excluded juror affidavit concerning the method by which the jury arrived at its verdict); *Verren*, 227 Kan. at 262-63 (juror testimony admissible to show 'a conscious conspiracy by the members of the jury to disregard and circumvent the instructions on the law given by the court'); *Gannaway v. Missouri-Kansas-Texas Rld. Co.*, 2 Kan. App. 2d 81, 84, 575 P.2d 566 (1978) (juror testimony that jury disregarded instructions permissible only if it is 'apparent from the verdict itself that the jury had misunderstood or disregarded the instructions'). Buford's affidavit does not establish a conscious conspiracy. Additionally, the alleged irregularity of the damages awarded is not apparent from the verdict." 253 Kan. at 478-79.

We normally do not allow testimony or affidavits of jurors to impeach a verdict where it is not obvious from the verdict that the jury failed to follow instructions. However, in *City of Ottawa v. Heathman*, 236 Kan. 417, 425, 690 P.2d 1375 (1984), we again recognized the longstanding exception applied to cases where a

juror alleges the jury entered into a conscious conspiracy to circumvent the deliberation process by engaging in conduct which produces a quotient verdict. By refusing to admit the juror's affidavit in *Cott,* we recognized that the affidavit there did not establish conduct amounting to a quotient verdict.

The process used to reach a verdict in the present case is more similar to the process applied in *Cott* than to the process traditionally labelled as rendering a quotient verdict. Essentially, the amount of damages here was reduced to an amount, one-half, that all the jurors but one agreed upon. There was in the strictest sense no averaging, which requires the addition of a set of numbers before the sum is divided by the number of amounts added together.

Another distinction between a quotient verdict and the verdict in the present case is that the jurors were capable of knowing the result to which they were agreeing before they gave their agreements. Our previous quote from *Blevins* describes a quotient verdict as a "gambling" verdict because the advance agreement is made before any juror can possibly know the ultimate figure to which the jury has been committed. A computation of half of the amount claimed in each of six damage categories results in an amount easily estimated or known. Such an award could not under any instance be deemed a gambling verdict.

We have previously set forth that even when jurors calculate a verdict using the quotient method, but then independently agree to that figure afterwards, the verdict is not rendered through jury misconduct. See *Siruta v. Hesston Corp.,* 232 Kan. 654, 669, 659 P.2d 799 (1983); *Blevins,* 186 Kan. at 264. There is no difference in that rule and the facts here because in agreeing to divide Jones' damages claims by two, the jurors gave their independent assent to known or easily ascertainable amounts.

Other jurisdictions have reached similar results in finding that verdicts rendered in a manner like the one in this case are not quotient verdicts. In the case most on point, *Fales v. Kaupp et. al.,* 83 S.D. 487, 161 N.W.2d 855 (1968), the Supreme Court of South Dakota faced the question of whether a verdict in an amount exactly one-half of that claimed by the plaintiff was a quotient verdict. The court noted:

"This claim is based on the affidavit of one of the jurors which states 'that the verdict of the jury was reached by dividing the figure "2" into the plaintiffs' claim for damages of $2411.50, and then he was awarded damages in the amount of $1205.75.' No showing in opposition was submitted. In our view the defendants' proof does not bring this award within our rule against quotient verdicts." 83 S.D. at 491.

In another similar case, *Sunset Brick & Tile, Inc. v. Miles*, 430 S.W.2d 388 (Tex. Civ. App. 1968), a Texas court found that a decision to award the plaintiff 75% of his claim did not amount to a quotient verdict:

"The biasness which is common to the quotient verdict or the toss of the coin, is the agreement by the jurors in advance to be bound by a result . . . even though at the time they make the agreement they do not know what that result will be. This amounts to a verdict by chance rather than by thought and reflection. [Citations omitted.] Here the jurors knew the amount that the attorneys were asking, not only from the petition but from the argument made to them by the appellees' attorneys. The affidavit itself verifies the harmless mental process of this juror where she says: '. . . some of the jurors wanted to give each one of the plaintiffs 100% of the amount that the attorneys asked for, but I did not feel that they were entitled to that much.' The juror said that after much argument they all decided to give them 75%. The jurors are presumed to know with reasonable accuracy what 75% of a certain amount is, so in effect they were agreeing to a known amount. We hold that the statement made by juror Mann does not evidence a prior agreement to be bound by an unknown result." 430 S.W.2d at 392.

The affidavits, pleadings, instruction, and verdict in the present case do not establish that the jury conspired to circumvent the deliberation process by agreeing to accept as its verdict the results of an unknown calculation. We hold the jury did not render a quotient verdict. The decision of the Court of Appeals granting a new trial on the grounds that the jury returned a quotient verdict is reversed.

As no cross-petition for review was filed by Sigg raising the question of whether the verdict was an illegal or improper compromise verdict, we need not consider such contention. See Supreme Court Rule 8.03(a)(5)(c) and (b)(1) (1996 Kan. Ct. R. Annot. 48).

The judgment of the Court of Appeals is reversed. The judgment of the trial court is affirmed.